**UNITED STATES of America,
Plaintiff–Appellant–Cross–Appellee,**

v.

**50.50 ACRES OF LAND, et al.,
Defendants–Appellees–Cross–Appellants.**

Nos. 89–56299, 90–55024 and 90–55109.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 12, 1991.

Decided May 1, 1991.

---

William B. Lazarus, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellant-cross-appellee.

Jerrold A. Fadem and Ann Kelly, Fadem, Berger & Norton, Los Angeles, Cal., for defendants-appellees-cross-appellants.

Before FERGUSON, HALL and RYMER, Circuit Judges.

FERGUSON, Circuit Judge:

The government appeals the district court's award of interest and costs in an eminent domain proceeding. The landowners cross-appeal, contending that the district court erred in denying them attorney fees as the prevailing party and in refusing to include severance damages as part of its just compensation award.

## I.

The United States brought a condemnation action to take property located in Oxnard, California, at the request of the Department of the Air Force for the Point Mugu Air National Guard Base. The land taken consisted of five contiguous tracts, numbered 101 through 105, totaling 188.07 acres, which were part of a larger vegetable farming operation. On March 22 and 23, 1987, the government filed declarations of taking for the five tracts and deposited with the court its estimated valuation of each of the properties.[1] The landowners[2] contested the government's valuation of

---

1. An appendix to this opinion sets out the amount deposited for each tract and a chronology of the distributions.

2. Tracts 101, 102, and 103 were owned by J. Nishimori Growers, Inc. Tract 104 was owned by Robert M. Brooks. Tract 105 was owned, in almost equal parts, by a corporation named B.N.L. Land Co. (Brooks–Nishimori–Lombardi)

and Robert M. Brooks. While the tracts were owned separately, the landowners had been farming the tracts as a single parcel and have pursued this action as a single entity. San Miguel Produce Partnership, the company which had leased the farmland from the owners, was also joined as a party to this action.

the taken property. On July 31, 1987, the district court ordered the cases consolidated.

The government's taking left a remainder parcel, Tract 107, of 27 acres which was owned by the landowners.[3] A packing plant was located on 14 acres, while the other 13 acres were used as crop land. On September 30, 1987, the parties stipulated that the United States would pay the landowners' costs of relocating certain water lines and tile drainage lines, which ran across the taken tracts to the packing plant.

A six-day bench trial was held in late January 1989 to determine the just compensation due the landowners. The highest value for the taking attested to at trial by the government's expert witness was $3,467,000.00. The highest value attested to at trial by the landowners' appraiser was $5,530,000.00. At trial, the landowners contended that the market value of the remainder parcel was diminished by the government's taking of the other tracts. Their valuation testimony included this alleged reduction in value, i.e., severance damages. The landowners also requested that the court award interest on monies deposited for Tracts 101 and 105 because of the government's opposition to disbursement motions for those tracts. They requested that interest be set at the market rate.

On May 26, 1989, the district court entered its findings of fact and conclusions of law. In September, 1989, it issued a revised judgment order. The court found that the value of the land on the date of taking was $23,000 per acre. Therefore, it awarded $4,325,781 for the value of the land taken. In addition, the court found that improvements on the taken land were worth $160,000. In refusing to award severance damages, the court rejected the landowners' assertion that the value of the remainder tract had been adversely affected by the taking. Finally, the court awarded interest of 9% per annum on the award from the date of taking.

The government timely appealed the court's judgment of interest and the landowners cross-appealed on the issue of severance damages. On November 13, 1989, the court entered an order awarding the landowners costs. On the same day, the court denied the landowners' request for attorney fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, finding that the government's position had been "substantially justified." The government appeals the award of costs, while the landowners cross-appeal the denial of attorney fees.

## II.

The government appeals the district court's order that interest be paid on all deposits from the date of deposit to the date of disbursement.[4] It asserts that the Declaration of Taking Act, 40 U.S.C. § 258a, explicitly prohibits such an award.

The interpretation of a statute is a question of law which is reviewed *de novo*. *See, e.g., Saratoga Sav. Loan Ass'n v. Federal Home Loan Bank Bd.*, 879 F.2d 689, 691 (9th Cir.1989). Mixed questions of law and fact that implicate constitutional rights are also reviewed *de novo*. *Wood v. Sunn*, 865 F.2d 982, 986 (9th Cir.1988).

Since 1931, the Declaration of Taking Act has prescribed a procedure by which the United States may exercise its eminent domain power. 40 U.S.C. § 258a. In relevant part, the Act states:

> Upon the filing [of] said declaration of taking and of the deposit in the court, to the use of the persons entitled thereto, of

---

**3.** Tract 107 was owned in equal parts by Robert M. Brooks, Roy I. Nishimori, and Ronald Lombardi.

**4.** Specifically, the district court's judgment required the government to pay 9% interest on the following amounts for the time between March 23–24, 1987 (the deposit dates) and the disbursement dates:

1. $2,573,368.70; disbursed on Aug. 13, 1987 (139 days).
2. $101,579.68; disbursed on Aug. 19, 1987 (145 days).
3. $333,778.43; disbursed on Oct. 14, 1987 (200 days).
4. $673,420.32; disbursed on Oct. 27, 1987 (213 days).

the amount of the estimated compensation stated in said declaration, title to said lands ... shall vest in the United States of America, ... and the right to just compensation for the same shall vest in the persons entitled thereto; ... [interest shall be paid on any deficiency determined after judgment]; *but interest shall not be allowed on so much thereof as shall have been paid into the court.*

*Id.* (emphasis added). The Supreme Court has stated that the statute serves a dual purpose.

First, to give the Government immediate possession of the property and to relieve it of the burden of interest accruing on the sum deposited from the date of taking to the date of judgment.... Secondly, to give the former owner, if his title is clear, immediate cash compensation to the extent of the Government's estimate of the value of the property.

*United States v. Miller,* 317 U.S. 369, 381, 63 S.Ct. 276, 283, 87 L.Ed. 336 (1943). This court has held that the statute expressly prohibits interest awards on any amount deposited with the court at the time of taking. *United States v. Blankinship,* 543 F.2d 1272, 1275 (9th Cir.1976); *see also Atlantic Coast Line R. Co. v. United States,* 132 F.2d 959, 962 (5th Cir.1943) (no interest on deposit when owners never applied for disbursement).

However, we have never addressed the situation at issue here. Other courts have recognized that, under some circumstances, the Constitution requires payment of interest on amounts deposited despite the Declaration of Taking Act's prohibition. The Fifth Circuit found the government liable for interest for the period during which it moved for and received an order freezing the distribution of the deposit pending its appeal. *Bishop v. United States,* 288 F.2d 525 (5th Cir.1961). Referring to the interest restriction in the Declaration of Taking Act, the *Bishop* court found that when the government's actions frustrate the Act's purpose, interest must be charged. *Id.* at 528–29. The court held that it was acceptable for the government to oppose distribution in order to protect its rights, but inter-

est would accrue during that period. *Id.* at 528. *See also United States v. 15.03 Acres of Land, etc.,* 253 F.2d 698 (2d Cir.1958) (when government secured an *ex parte* order prohibiting distribution pending its appeal, it effectively withdrew the deposit and was thus obligated to pay interest while stay order was in effect).

In addition, the Third Circuit has found that government action short of an actual motion to halt distribution will require payment of interest on deposited funds. In *United States v. 355.70 Acres of Land, etc.,* 327 F.2d 630 (3rd Cir.1964), the court found that the government had not fulfilled its duty under the Declaration of Taking Act, because it had imposed upon the court and the parties the cumbersome task of allocating the deposit among separately owned parcels. *Id.* at 632. Therefore, the government was obligated to pay interest for the delay in disbursement to the property owners.

*355.70 Acres* distinguished an earlier case which did not award interest on deposited monies, *United States v. 53 1/4 Acres of Land, etc.,* 176 F.2d 255 (2d Cir.1949), noting that case dealt with "conflicting ownership claims within individual parcels." *355.70 Acres,* 327 F.2d at 633. In *53 1/4 Acres,* on the other hand, the court found that the "delay in payment [was not] caused by the government but ... by the multiplicity and nature of the interest for which claimants were entitled to be paid...." *53 1/4 Acres,* 176 F.2d at 259.

■ We adopt the reasoning of our sister circuits that the government may be obligated to pay interest on deposited monies only if disbursement of the funds is delayed by government action. Absent affirmative acts of delay, the government may not be required to pay interest for the period between its deposit and the landowner's disbursement motion or for the period between the court's disbursement order and the actual distribution by the court registry. *See Bishop,* 288 F.2d at 528; *53 1/4 Acres,* 176 F.2d at 259; *cf. Atlantic Coast Line R. Co.,* 132 F.2d at 962–63 (no interest awarded where land-

owners failed to make application for the money deposited by the government). Here, the district court clearly erred by finding the government liable for interest from the date of deposit to the date of disbursement.

 The government concedes that it held up the distribution of the funds in Tract 105 for 21 days due to its concern that all interested parties had not been notified. The landowners assert that the government's opposition to the Tract 105 disbursement effectively froze all of the deposits, thereby justifying an interest award on all deposits. There is no factual basis to this contention. While the landowners insist on characterizing the deposited monies as a lump sum, the cases were not consolidated until after the disbursements were made. The government's opposition to disbursement for specific tracts only delayed the entire amount because the landowners chose to deal with the deposits as one aggregated sum. The landowners' disbursements were delayed by the number of banks and other lienholders involved. Where the difficulty in determining the appropriate disbursement arises from the complexity of the interests in a single tract, the government is not obligated to pay interest. *53 1/4 Acres*, 176 F.2d at 259.

 The landowners also dispute the government's claim that it formally opposed distribution of only Tract 105's deposit. They contend that the government delayed the distribution of Tract 101's deposit by filing a "Memorandum Re: Distribution." A review of that document reveals that the government was opposing the distribution of only $125,000 of the total deposit. The government should only be obligated to pay interest on the $125,000 from the date of its memorandum to the date of the court's disbursement order. *See 53 1/4 Acres*, 176 F.2d at 258–59 (government may earmark disputed amount if less than total deposit).

The landowners asked the district court to award interest on only the disbursements delayed by the government's opposition to Tracts 101 and 105. They are now in the position of having to defend the district court's much larger award. They cite the government's bad faith stipulation negotiations and threat to cut off water to the remainder parcel. However, there is no evidence that the government in some way prevented the landowners from applying for disbursement. The landowners were under no obligation to enter an agreement with the government. They were at all times free to go into court to apply for disbursement. We remand with instructions to the district court to order interest only for those times and on those amounts of which the government formally opposed disbursement for Tracts 101 and 105.

### III.

The government next contends that the district court's finding that a flat 9% per annum interest rate should be paid on the judgment deficiency and deposits was in error. It asserts that the court should have followed the statutory formula for interest in condemnation cases or, alternatively, that the court did not have any evidentiary support for its conclusion that 9% was a reasonable rate. The landowners respond that the courts have rejected statutory limits on eminent domain interest awards and that the district court here was provided with sufficient evidence at trial to support its finding that 9% was a reasonable rate.

 The determination of a reasonable rate of interest is a finding of fact and should be disturbed only if clearly erroneous. *United States v. 429.59 Acres of Land*, 612 F.2d 459, 464 (9th Cir.1980); *United States v. Blankinship*, 543 F.2d 1272, 1274 (9th Cir.1976). However, as stated earlier, a district court's determinations on mixed questions of law and fact that implicate constitutional rights are reviewed *de novo*. *Wood v. Sunn*, 865 F.2d 982, 986 (9th Cir.1988).

The Declaration of Taking Act, 40 U.S.C. § 258a, as amended in 1986 by 40 U.S.C. § 258e–1, also controls the interest rate issue. Prior to the 1986 amendment, the statute declared that a just compensation award shall include "interest at the rate of

6 per centum per annum on the amount finally awarded as the value of the property as of the date of taking...." 40 U.S.C. § 258a (1986). However, the courts had previously ruled that the statute's directive was outside the bounds of congressional authority.

■ Almost one hundred years ago, prior to the Declaration of Taking Act's 1931 enactment, the Supreme Court declared:

> [just compensation] is a judicial and not a legislative question. The legislature may determine what private property is needed for public purposes—that is a question of a political and legislative character; but when the taking has been ordered, then the question of compensation is judicial.... The constitution has declared that just compensation shall be paid, and the ascertainment of that is a judicial inquiry.

*Monongahela Navigation Co. v. United States*, 148 U.S. 312, 327, 13 S.Ct. 622, 626, 37 L.Ed. 463 (1892). An interest award becomes a necessary part of a just compensation award when the government's initial deposit falls short of the eventual award. *Seaboard Air Line Ry. Co. v. United States*, 261 U.S. 299, 306, 43 S.Ct. 354, 356, 67 L.Ed. 664 (1923).

In 1976, in *Blankinship*, this court acknowledged that the constitutional requirement of just compensation included an award of " 'interest at a proper rate.' " *Id.*, 543 F.2d at 1275 (quoting *Seaboard Air Line Ry.*, 261 U.S. at 306, 43 S.Ct. at 356). The court held that "the 6 percent figure employed by Congress in the Declaration of Taking Act cannot be viewed as a ceiling on the rate of interest allowable.... It will, of course, operate as a floor." *Id.* at 1276. The *Blankinship* court directed district courts to use a fact-specific approach to determine if the statutory rate was "proper and reasonable," or if the Fifth Amendment required a higher rate of interest. *Id.* at 1274.

■ Under *Blankinship*, the court must first determine if the statutory formula is constitutionally inadequate given the factual circumstances of the case. *Blankin-*

*ship*, 543 F.2d at 1274. The court should receive evidence from each side and consider a variety of investment measures. If the court finds the statutory formula to be inadequate, it must then determine the appropriate rate to be used. *Id.* Later, in *United States v. 429.59 Acres of Land*, 612 F.2d 459 (9th Cir.1980), the court clarified the standard to be used when determining the applicable interest rate.

> Thus, it is proper, when payment of just compensation is delayed, to fix interest on any deficiency award at the rate "a reasonably prudent person investing funds so as to produce a reasonable return while maintaining safety of principal" would receive.

*Id.* at 465. The *429.59 Acres* court found that the district court was justified in determining that 7.4% per annum was a reasonable rate as long as it had considered a diverse portfolio of investments, including government bonds. *Id.* Other circuits reached similar conclusions. *See, e.g., United States v. 125.2 Acres in Nantucket County, Mass.*, 732 F.2d 239 (1st Cir.1984); *Washington Metropolitan Area Transit Authority v. One Parcel of Land*, 706 F.2d 1312 (4th Cir.), *cert. denied*, 464 U.S. 893, 104 S.Ct. 238, 78 L.Ed.2d 229 (1983); *United States v. 329.73 Acres, Grenada and Yalobusha Counties*, 704 F.2d 800 (5th Cir. 1983) (en banc).

■ The government urges this court to find that while the old statutory rate could only be a floor for interest awards, the new statute should act as a ceiling as Congress intended. The new statute was enacted in response to the courts' rejection of the 6% flat rate and requires interest to be determined based on a formula using one-year Treasury Bills. 40 U.S.C. § 258e–1 (1990). The landowners respond that the statutory change does not alter the reasons underlying this court's previous rejection of legislative limits on interest rates.

The Ninth Circuit has not addressed the issue of a proper interest rate since the law was amended. We agree with the landowners that nothing in the new statute can change the Supreme Court's determination

that just compensation "is a judicial[,] not a legislative[,]" function. *Monongahela Navigation Co.*, 148 U.S. at 327, 13 S.Ct. at 626. While the new statute attempts to create a variable interest rate reflective of market changes, it is based only on one-year Treasury bill rates. In *429.59 Acres of Land*, this court held that in determining the interest rate applicable to a "reasonably prudent investor," a district court should consider a diverse mix of securities. *Id.*, 612 F.2d at 465. The court affirmed a judgment of interest based on an average of the rates paid on Treasury bills, commercial paper, certificates of deposit, and bank loans. *Id.*

■■■ While the government's contention that the district court was bound by the statutory interest rate fails, its second assertion that the district court's award was not based on substantial evidence has merit. The district court in its findings of fact stated simply that "[t]he appropriate rate of interest payable on the award ... is a flat rate of 9% per annum...." The court failed to first determine that the statutory rate was unreasonable and did not consider evidence regarding market interest rates before departing from the statutory interest rate.

While interest rates were discussed during the bench trial here, there was never an explicit consideration of the returns available on different securities at the time of the taking. The landowners point out that the court received testimony regarding a 10% capitalization rate. However, this testimony related only to the expert witness' calculation of severance damages. There is no indication that the capitalization rate had any relevance to what return rate a "reasonably prudent investor" would receive. Likewise, the 9% interest rate that the court determined was implicit in an option sale used as a comparable sale for land valuation purposes was simply one

example of interest received in a particular land investment.

For these reasons, we remand this case to the district court for a determination of whether the new statutory formula provides a "proper and reasonable" interest rate, and, if not, application of an interest rate based on evidence of a diverse group of securities, including Treasury bills.

## IV.

The district court granted the landowners costs, relying on the Equal Access to Justice Act, 28 U.S.C. § 2412(d), and Local Rule 16. The government appeals this order, contending that the landowners are not prevailing parties under the recent amendments to the EAJA.[5] 28 U.S.C. § 2412. The landowners respond that they are in fact prevailing parties, either according to the new amendment or the previous definition established by this court.

■■■ We review a district court's grant or denial of attorney fees and costs under the Equal Access to Justice Act for abuse of discretion. *United States v. 101.-80 Acres of Land, etc.*, 716 F.2d 714, 728 (9th Cir.1983). "The court's interpretation of the EAJA, however, is subject to *de novo* review." *Merrell v. Block*, 809 F.2d 639, 640 (9th Cir.1987).

The disagreement between the parties regarding the appropriate prevailing party definition stems from a 1985 amendment to the Equal Access to Justice Act. Act of Aug. 5, 1985, Pub.L. 99–80, §§ 2, 6, 1985 U.S.Code Cong. & Admin.News (99 Stat.) 184, 186. Prior to 1985, many courts had applied the prevailing party test such that a landowner could never be the prevailing party in a condemnation action if the government took possession of the land. *See 101.80 Acres of Land*, 716 F.2d at 723, 723 n. 15 (discussing prior interpretation of § 2412 and citing cases which held a con-

---

**5.** The government also correctly argues that a district court cannot award costs against the United States based on Local Rule 16. It is well-settled that an award of costs or fees against the United States may only occur when there has been an express waiver of sovereign immunity. *101.80 Acres of Land*, 716 F.2d at

725 n. 18 (citing *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980)). The Equal Access to Justice Act is the only statute applicable to this case which justifies an award of costs against the government.

demnee could not be a prevailing party); H.R. Supp. Rep. No. 99–120(II), 99th Cong., 1st Sess. (1985), *reprinted in* 1985 U.S. Code Cong. & Admin.News 132, 151, 156 ["House Report II"]. However, in 1983, we held that a condemnee could be a prevailing party if he or she "secures a just compensation award substantially greater than the original deposit." *101.80 Acres,* 716 F.2d at 723.

In 1985, Congress added the following amendment:

> (H) "prevailing party", in the case of eminent domain proceedings, means a party who obtains a final judgment (other than by settlement), exclusive of interest, the amount of which is at least as close to the highest valuation of the property involved that is attested to at trial on behalf of the property owner as it is to the highest valuation of the property involved that is attested to at trial on behalf of the Government.

28 U.S.C. § 2412(d)(2) (Supp.1990). The landowners argue that this amended definition should not apply to cost awards under the EAJA. They base this argument on a literal reading of the act. The new definition of prevailing party for eminent domain purposes is located in the subsection addressing attorney fee awards and is preceded by the words: "[f]or the purposes of this subsection ...." 28 U.S.C. § 2412(d)(2). Therefore, the landowners argue, the amendment was not meant to change the definition of prevailing party for purposes of an award of costs under subsection (a).

The landowners prefer the more flexible test used by this court before the 1985 amendment. Under the standard in *101.80 Acres,* a defendant in an eminent domain proceeding may be a prevailing party under § 2412 if he or she "secures a just compensation award substantially greater than the original deposit." *101.80 Acres,* 716 F.2d at 723. The landowners argue that because their final award was one million dollars more than the government's original deposit, they would be the prevailing party under this test.

■ We have not addressed previously the meaning of the new amendment in regard to an award of costs. However, we have held generally that "[w]hen the same word or phrase is used in different parts of a statute, we presume that the word or phrase has the same meaning throughout." *S & M Inv. Co. v. Tahoe Regional Planning Agency,* 911 F.2d 324, 328 (9th Cir. 1990), *cert. denied,* — U.S. ——, 111 S.Ct. 963, 112 L.Ed.2d 1050 (1991). This principle of statutory construction indicates that "prevailing party" should have the same definition for purposes of both costs and attorney fees.

Legislative history and judicial efficiency also weigh against adopting the landowners' interpretation. In adopting this amendment, Congress explained its intentions:

> The amendment relating to condemnation cases has two purposes. First, it makes clear that condemnation cases are covered by the Act. Second, it provides a standard for determining who the prevailing party would be in such actions.

House Report II at 156.

> The Committee expects that this amendment will terminate the uncertainty which currently exists due to continuing litigation over who is the prevailing party in condemnation actions. The Committee also hopes that the amendment will result in bringing the government and the property owner closer together in their land valuations, since they would both have the extra incentive of being determined the prevailing party under the Equal Access to Justice Act.

H.R.Rep. No. 120(I), 99th Cong. 1st Sess. (1985), *reprinted in* 1985 U.S.Code Cong. & Admin.News 132, 147. There is no indication in the Committee's report that the amendment was to apply to only attorney fees awards. Its purpose was to resolve any uncertainty regarding a landowner's status as a possible prevailing party and to make these determinations easier for the courts. These purposes would be frustrated if different standards were applied to

different sections of the act.[6] We conclude that the legislative history of the amendment reflects Congressional intent that the new definition was to apply to awards of both costs and fees.

We now review whether the district court correctly found the landowners to be the prevailing party under the new definition. The district court's just compensation award consisted of the following amounts: land value, $4,325,771.00; water stipulation, $35,312.32; and improvements on the taken land, $160,000.00. Both parties here agree that, in accord with the language of § 2412, the court should not consider the payment agreed to by stipulation regarding water damages in its prevailing party determination. Therefore, the court's award, for purposes of determining prevailing party status, is $4,485,771 (the value of the land plus improvements).

Because the government's witness found that there were no severance or consequential damages, his valuation was simply one composite figure for the value of the land taken. This amount was $3,467,000. On the other hand, the landowners' appraiser broke down his valuation of the taken land into the following components: land value, $4,700,000; improvements, $212,000; severance damages, $618,000. The total amount the court was asked to award as just compensation was $5,530,000.

■ Comparing the amount awarded by the court with the gross valuations of each party at trial, the government is the prevailing party according to § 2412(d)(2)(H).[7] The landowners contest this calculation, contending that testimony regarding severance damages should not be included. They maintain that the severance damages

figure should be excluded because the statute only covers testimony related to the valuation of the land taken, while severance damages center on damage to the land *not* taken.[8]

The landowners' contention is without merit. First, the landowners have no right to any award at trial other than that of "just compensation." Testimony on severance damages by a condemnee is an attempt to persuade the court that the value of the land taken includes its value as part of a larger tract. *See United States v. Miller,* 317 U.S. at 376, 63 S.Ct. at 281. "It is incorrect to think of 'severance damage' as a separate and distinct item of just compensation apart from the difference between the market value of the entire tract immediately before the taking and the market value of the remainder immediately after the taking." *United States v. 91.90 Acres of Land, etc.,* 586 F.2d 79 (8th Cir. 1978), *cert. denied,* 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979).

Second, the plain meaning of the statute requires that all testimony related to the just compensation award should be compared to the court's final award. The legislative history of new subsection (d)(2)(H) states that "the prevailing party is the one whose testimony in court is closer to the award." House Report II at 157. The Fifth Circuit has interpreted this new section to mean "that the total valuation of the land is the relevant number to be considered when determining which is the prevailing party 'whose testimon[ial position] in court is *closer* to *the award* (emphasis added).'" *United States v. 5,507.38 Acres of Land,* 832 F.2d 882, 883 (5th Cir.1987).[9]

---

6. Since the adoption of the amendment, one court has implicitly held that the same standard applies for an award of both costs and fees. *See United States v. 5,507.38 Acres of Land,* 832 F.2d 882 (5th Cir.1987). The Fifth Circuit applied the test in subsection (d)(2)(H) to review and affirm a district court's denial of costs and fees to landowners on grounds that they were not the prevailing party. *Id.* at 883.

7. The landowners' appraisal testimony was $1,044,229 greater than the court's award. The government's testimony was $1,018,771 less than the court's award.

8. They also contend that the only reason that the government's witness did not value severance damages was because he was instructed not to by the government. This assertion is simply wrong. Testimony by the government's appraiser indicates that he was under no special instructions, rather he independently concluded that the taking had no effect on the value of the remainder tract.

9. The landowners also contend that if this court considers severance damages in its determination of the prevailing party, the severance damages should only be attributed to one defendant,

■ We adopt the rule that any value testified to at trial which relates to the question of just compensation should be included when determining prevailing party for purposes of § 2412. The landowners' interpretation would only complicate future eminent domain proceedings. The district court here erred in finding that the landowners were the prevailing party under § 2412. The award of costs to the landowners is reversed.

### V.

In its hearing on the landowners' motion for attorney fees, the district court found that the government's position had been "substantially justified" under 28 U.S.C. § 2412(d)(1)(A) and denied the motion. On appeal, the landowners contend that the district court erred in its application of the law regarding "substantial justification." The government maintains that the district court should not have reached this point because the landowners were not the prevailing party.

As discussed above, the landowners were not the prevailing party. Therefore, attorney fees are not available under § 2412(d)(1)(A).

### VI.

At trial, the landowners also asked the court for damages to the 27–acre remainder tract caused by the government's taking. The district court denied all claims of severance and consequential damages. On appeal, the landowners contend that the lower court erred in denying severance damages for the loss in market value to the 12 acres of farmland because of farming inefficiencies caused by the new, smaller, and more irregular shape of the tract.

■ "As a general proposition, whether or not remainder property in a partial taking situation suffers resulting depreciation is a question of fact." *Georgia–Pacific Corp. v. United States*, 226 Ct.Cl. 95, 640

F.2d 328, 337 (1980). A district court's findings of fact are reviewed under the clearly erroneous standard. Fed.R.Civ.P. 52(a); *Kruso v. International Telephone and Telegraph Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990).

■ Severance damages are an issue in an eminent domain case only when the government takes part of a larger tract of land, leaving a remainder parcel with the original owners. Generally, the remaining land must be contiguous to the taken tract and must have unity of ownership. *See United States v. 87.30 Acres of Land, etc., State of Wash.*, 430 F.2d 1130, 1133 (9th Cir.1970). Here, the court agreed to consider the tracts taken and those remaining as one large parcel based upon the landowners' prior use of the land as a single farm. *See 429.59 Acres*, 612 F.2d at 463–64.

■ "In circumstances where there is a partial taking of property, just compensation is mandated for any depreciation in value of the remaining property not taken which is occasioned by the partial taking." *Georgia–Pacific*, 640 F.2d at 336 (citations omitted); *see also Miller v. United States*, 223 Ct.Cl. 352, 620 F.2d 812, 828 (1980) (owner must show loss in market value of remainder to receive severance damages). Here, the landowners asserted at trial that increased operation costs to the remainder parcel caused a reduction to the remainder's market value. On appeal, they contend that "[i]f the cost of farming a parcel, the highest and best use of which is as farmland, increases, then the value of that parcel decreases."

However, the district court found that the highest and best use of the property was "[f]arming the properties while holding them for investment purposes." An exchange between the court and the landowners during the landowners' appraisal testimony illustrates the flaw in the landowners' argument. In regard to valuation

San Miguel Produce Partnership. We will not accept such a shift in position on appeal. The landowners at trial argued that the separate land tracts should be considered one large tract

and that valuation should be done on that basis. In addition, all of the landowners appear to have an ownership interest in the remainder parcel.

of the land taken, the landowners testified that the property taken was worth more than the government claimed based on the pending urbanization of the area. But when it came time to assess damage to the remainder parcel, the landowners switched from emphasizing the correlation between market value and urbanization prospects to asserting that the property's value was strictly related to farming costs.

The district court noted the inconsistency in the landowners' argument:

All I'm saying is that you can't have both. You can't say that a significant element of the value of this property is the prospect of urbanization if you really believe that that prospect will not be realized for a period of 15 to 20 years.... You make the first statement that a significant element of the present value ... is the prospect of urbanization. Then you say that in your expert opinion that prospect is 15 or 20 years away [when assessing damage to the remainder parcel].

Based upon testimony presented in connection with the valuation of the taken property, the court found that a smaller tract actually had a greater market value in the Oxnard area and that the current farming operations on property in the area had little impact on market value. The court acknowledged that damages may be assessed for loss in market value to a remainder parcel caused by increased operating expenses and explicitly found that the government's taking had no effect on the market value of the remainder.

The landowners have not argued that these evidentiary findings of the district court were clearly erroneous. Therefore, we affirm the district court's denial of severance damages.

## VII.

We vacate and remand the district court's interest judgment. The district court should determine the appropriate interest rate in accordance with this opinion. Interest should be awarded only on the deficiency amount and the deposited funds in Tracts 101 and 105 whose disbursements

were opposed by the government. We reverse the district court's award of costs to the landowners, but affirm the denial of attorney fees. Lastly, we affirm the district court's denial of severance damages.

Each party to bear its own costs on appeal. AFFIRMED in part; REVERSED in part; VACATED in part; and REMANDED.

## APPENDIX

*Tract 101:*

[1] March 23, 1987 United States files declaration of taking and deposits $1,409,-500.00.

[2] June 25, 1987 Landowners file motion for disbursement.

[3] July 17, 1987 Court orders disbursement; United States will receive $125,-000.00 credit on disbursement from Tract 101 for water repairs.

[4] July 31, 1987 Court files amended order of disbursement. Cases are consolidated.

[5] August 13, 1987 $1,407,587.93 is disbursed by court registry.

*Tract 102:*

[1] March 23, 1987 United States files declaration of taking and deposits $1.00 with court.

[2] July 31, 1987 Cases are consolidated.

*Tract 103:*

[1] March 23, 1987 United States files declaration of taking and deposits $854,-500.00 with court.

[2] June 25, 1987 Landowners file motion for disbursement.

[3] July 15, 1987 Court orders disbursement.

[4] July 31, 1987 Court files amended order of disbursement. Cases are consolidated.

[5] August 13, 1987 $840,171.46 is disbursed from court registry.

[6] September 16, 1987 Landowners file second motion for disbursement.

[7] October 7, 1987 Court orders second disbursement.

[8] October 14, 1987 $14,328.54 is disbursed from court registry.

*Tract 104:*

[1] March 24, 1987 United States files declaration of taking and deposits $775,000.00 with court.

[2] June 25, 1987 Landowners filed motion for disbursement.

[3] July 17, 1987 Court orders disbursement.

[4] July 31, 1987 Cases are consolidated.

[5] August 19, 1987 $101,579.68 is disbursed from court registry.

[6] September 16, 1987 Landowners file second disbursement motion.

[7] October 1, 1987 Court orders second disbursement.

[8] October 14, 1987 Court files amended disbursement order.

[9] October 27, 1987 $673,420.22 is disbursed from court registry.

*Tract 105:*

[1] March 23, 1987 United States files declaration of taking and deposits $705,000.00 with court.

[2] June 15, 1987 Landowners file motion for disbursement.

[3] June 26, 1987 United States files opposition to disbursement.

[4] July 17, 1987 Court orders disbursement.

[5] July 31, 1987 Court files amended disbursement order. Cases are consolidated.

[6] August 13, 1987 $325,609.31 is disbursed from court registry.

[7] September 16, 1987 Landowners file second disbursement motion.

[8] September 30, 1987 Court orders second disbursement for $319,449.89. No record in docket sheet of when funds were actually disbursed. However, the funds appear to have been disbursed on October 14.