**UNITED STATES of America, Plaintiff–Appellant,**

**v.**

**2.6 ACRES OF LAND, More or Less, Situated in Whatcom County, State of Washington; Canada Connections, Inc., a Washington Corporation, Owner; City of Blaine, a Municipal Corporation; Unknown Owners, Defendants–Appellees.**

No. 99–35887.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 8, 2001

Filed June 1, 2001

John T. Stahr, Department of Justice, Environment and Natural Resources Division, Washington, D.C., for the plaintiff-appellant.

Douglas C. Berry and Elaine L. Spencer, Seattle, Washington, for the defendants-appellees.

Before: LAY,* TROTT, and BERZON, Circuit Judges.

TROTT, Circuit Judge:

This appeal arises from a condemnation action in which the United States took 2.6 acres of property owned by Canada Connections. The government and Canada

---

* The Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by desig-

nation.

Connections disputed the value of the land, which resulted in a jury trial on the issue of just compensation. The jury determined that just compensation for the taking was $748,804. The district court subsequently concluded that Canada Connections was the "prevailing party" under the Equal Access to Justice Act ("EAJA"), and awarded Canada Connections attorney's fees and costs. The government appeals this award by the district court. We have jurisdiction under 28 U.S.C. § 1291, and VACATE the district court's award of attorney's fees and costs to Canada Connections.

## I

### Background

Canada Connections is a corporation formed by Hiroaki (Henry) Yuki and a partner for the purpose of acquiring and holding property on the United States/Canadian border. In 1990, Canada Connections purchased 3.2 acres of land on the Canadian border in Blaine, Washington to develop offices to serve customs brokers.

On July 1, 1997, the United States brought this condemnation action to acquire 2.6 acres of the 3.2 acres of land owned by Canada Connections for the construction of a border crossing facility. The government acquired fee simple title to the 2.6 acres of land in May of 1997, after filing a declaration of taking and depositing $420,000 in estimated just compensation into the registry of the court.

Canada Connections disputed the government's valuation of the land, which led to a jury trial on the issue of just compensation in March of 1999. During its opening statement at this trial, counsel for Canada Connections informed the jury that the company intended to present two witnesses who would offer their opinions regarding the proper amount of just compen-

sation for the taken land. Counsel advised the jury that one opinion would come directly from Henry Yuki, a co-owner of Canada Connections, who "will tell you that he believes the property was worth about one and a quarter million dollars before the taking, and that the remainder that's left isn't worth much of anything." The other opinion, counsel stated, would come from Garrett Waldner, a certified appraiser, who "estimates the value before the taking a little lower" and "probably gives the property that's left the benefit of the doubt," and would testify that just compensation should be $891,000. Canada Connections then asked the jury to disregard any just compensation value offered by the government's expert appraiser during the trial, and "to consider what Mr. Yuki tells you about what he believes the property is worth, what Mr. Waldner tells you, and to base your conclusion about just compensation on those opinions."

During the trial, Canada Connections questioned Yuki regarding his qualifications to formulate an estimated value of the property. Yuki responded that he was very familiar with the custom brokerage business and the potential profits that could be expected therefrom, that he owned several properties in the general Blaine area, and that he was "pretty familiar" with "real estate in general in the Blaine area." Yuki then estimated that the 2.6 acres of land taken by the government were worth $1.25 million. He explained that this figure was based upon a commercial valuation of $9 per square foot, which he considered to be the lowest possible value that reasonably could be assigned to the property. Yuki also expressed his belief that the value of the remaining land not taken by the government was "practically none . . . because of the shape of the property and also . . . that there are large traffic of trucks and extremely bright light. There is hardly any

interest in that property." Thus, Yuki concluded that the total just compensation owed to Canada Connections by the government was $1.25 million.

The jury also heard testimony from Waldner—Canada Connections' expert appraiser—who opined that the value of the property prior to the taking was $990,000, while the 0.8 acres left after the taking was worth $98,000, thus yielding a just compensation valuation of $892,000.

In rebuttal to the two opinions proffered by Canada Connections, the government presented testimony by Bruce C. Allen, a certified appraiser. Allen concluded that the property was worth $500,000 prior to the taking, and $35,000 after the taking, resulting in a just compensation figure of $465,000.

During its closing argument, Canada Connections again urged the jury to rely exclusively on the testimony of Yuki and Waldner in setting the amount of just compensation owed by the government. Canada Connections then reviewed Yuki's valuation of the property at $1.25 million, and reminded the jury that Yuki had testified that the value of the remainder of the property after the taking was "nothing."

The jury ultimately awarded Canada Connections just compensation in the amount of $748,804. The district court then ordered the government to pay into the court registry the sum of $328,804, which represented the difference between the value of the land as determined by the jury and the amount previously deposited with the government's complaint.

Canada Connections subsequently filed a motion for interest on the deficiency, and for attorney's fees and costs under the EAJA. The district court granted the motion and awarded Canada Connections $73,747 in attorney's fees and costs. The government appeals the district court's award of fees and costs.

## II

### Standard of Review

■ A district court's grant or denial of attorney's fees and costs under the EAJA is reviewed for an abuse of discretion. *United States v. 50.50 Acres of Land,* 931 F.2d 1349, 1356 (9th Cir.1991). "The court's interpretation of the EAJA, however, is subject to *de novo* review." *Merrell v. Block,* 809 F.2d 639, 640 (9th Cir.1987).

## III

### Analysis

The EAJA authorizes a court to award attorney's fees and other expenses to a prevailing party other than the United States in a civil action brought by or against the United States. 28 U.S.C. § 2412(d)(1)(A). The EAJA expressly defines a "prevailing party" as follows:

> "[P]revailing party," in the case of eminent domain proceedings, means a party who obtains a final judgment (other than by settlement), exclusive of interest, the amount of which is *at least as close to the highest valuation of the property involved that is attested to at trial on behalf of the property owner as it is to the highest valuation of the property involved that is attested to at trial on behalf of the Government;* . . . .

28 U.S.C. § 2412(d)(2)(H) (emphasis added).

Thus, to qualify as a prevailing party, Canada Connections must prove that the highest valuation submitted on its behalf at trial is closer to the final judgment of $746,804 than is the $465,000 valuation submitted by the government. If the highest valuation attested to at trial on behalf of Canada Connections is the $1.25

million figure offered by Yuki, then the government's valuation of $465,000 is closer to the final judgment and the company cannot qualify as a prevailing party for purposes of 28 U.S.C. § 2412(d)(2)(H). If, on the other hand, we determine that Waldner's valuation of $892,000 is the highest valuation attested to by Canada Connections, then Canada Connections' valuation is closer to the final judgment than the figure submitted by the government, and the company qualifies as a prevailing party under 28 U.S.C. § 2412(d)(2)(H).

In determining the highest valuation attested to on behalf of Canada Connections at trial, the district court disregarded the valuation offered by Yuki, and focused exclusively on the valuations offered by Waldner and Allen. Accordingly, the court concluded that Canada Connections was the prevailing party under 28 U.S.C. § 2412(d)(2)(H). The district court offered no explanation for its decision to exclude the valuation testimony tendered by Yuki.

Canada Connections argues that the district court's conclusion comports with the plain language of 28 U.S.C. § 2412(d)(2)(H), which allows a district court to consider only the "highest valuation of the property involved that is attested to at trial *on behalf of* the property owner...." 28 U.S.C. § 2412(d)(2)(H) (emphasis added). Canada Connections contends that the phrase "on behalf of the property owner" refers only to valuations submitted by an appraiser, and excludes all valuations submitted by the actual property owner. This argument is unpersuasive.

■ "When interpreting a statute, we first look to the plain language of the statute to interpret its provisions." *Vardanega v. Internal Revenue Serv.*, 170 F.3d 1184, 1185–86 (9th Cir.1999). The plain language of 28 U.S.C.

§ 2412(d)(2)(H) supports the government's position that a landowner's valuation of his property must be considered when determining who is a prevailing party under the EAJA. The statute's requirement that a district court consider the "highest valuation of the property ... attested to at trial on behalf of the property owner" encompasses testimony offered by a property owner *on his own behalf.* Contrary to Canada Connections' assertions, the plain language of the statute simply does not suggest that Congress intended for valuation testimony offered by a landowner on his own behalf to be distinguished from testimony given on his behalf by others.

This conclusion is solidified by the legislative history behind 28 U.S.C. § 2412(d)(2)(H), which illustrates that Congress intended for a landowner's valuation testimony to be considered by a district court in determining who is a prevailing party under the EAJA. The Report of the House Committee on the Judiciary explains that Congress added 28 U.S.C. § 2412(d)(2)(H) to the EAJA in 1985 to "terminate the uncertainty ... over who is the prevailing party in condemnation actions." H.R.Rep. No. 120(I), 99th Cong. 1st Sess. (1985), *reprinted in* 1985 U.S.Code Cong. & Admin. News 132, 147. This purpose would be frustrated if we were to accept Canada Connections' proposed interpretation of the statute. For instance, if a district court could not consider a landowner's valuation testimony under 28 U.S.C. § 2412(d)(2)(H), it would be entirely unable to discern who qualifies as a prevailing party in a condemnation action where the only valuation testimony offered at trial on behalf of a landowner is his own. This ambiguity is the precise problem Congress sought to alleviate by enacting 28 U.S.C. § 2412(d)(2)(H).

The strength of Canada Connections' argument is also tempered by the Report's

explanation that Congress intended for the statute to "result in bringing the Government and the property owner closer together in their land valuations, since they would both have the extra incentive of being determined the prevailing party under the [EAJA]." Thus, Congress's definition of a prevailing party under the EAJA was intended to entice landowners to refrain from presenting inflated valuation testimony to the jury. This incentive would be lost if property owners were permitted to personally advocate a high valuation of their property for compensation purposes, but then disavow such testimony when seeking to recover fees.

Furthermore, the government's position is supported by the Report's statement that "the prevailing party is the one *whose testimony in court is closer to the award.*" H.R.Rep. No. 120(I), 99th Cong. 1st Sess. (1985), *reprinted in* 1985 U.S.Code Cong. & Admin. News 132, 147 (emphasis added). This language suggests that in enacting 28 U.S.C. § 2412(d)(2)(H), Congress did not intend to limit relevant valuation testimony to that offered by an expert appraiser, but rather that it intended for *all* testimony relating to the issue of just compensation to be considered by a district court in determining who is a prevailing party.

Our holding in *United States v. 50.50 Acres of Land,* 931 F.2d 1349 (9th Cir. 1991), supports this conclusion. In *50.50 Acres,* the property owners' appraiser testified at trial that the value of the taken land was $5,530,000, which reflected the following computations: "land value, $4,700,000; improvements, $212,000; severance damages, $618,000." *Id.* at 1358. The government's witness countered by suggesting that there were no severance damages and that the value of the land taken by the government was $3,467,000. *Id.* The district court ultimately awarded the property owner $4,485,771 in just compensation, which did not include any severance damages. Based upon the gross valuations submitted by each party, the district court concluded that the government's valuation was closer to the actual judgment and declared the government to be the prevailing party.

On appeal to this court, the landowners in *50.50 Acres* asserted that the district court erroneously considered their expert's valuation testimony concerning severance damages in declaring the government to be the prevailing party. *Id.* at 1357. This argument was premised on the landowners' belief that the statute only contemplates testimony related to the valuation of the land, whereas severance damages concern damage to the land not taken. We rejected this argument, concluding that the statute requires a district court to consider *all* testimony relating to the question of just compensation when determining who is a prevailing party. Specifically, we held:

> [T]he plain meaning of the statute requires that *all testimony* related to the just compensation award should be compared to the court's final award. The legislative history of new subsection (d)(2)(H) states that "the prevailing party is the one whose testimony in court is closer to the award." House Report II at 157.

> ·       ·       ·       ·       ·

> We adopt the rule that *any value testified to at trial* which relates to the question of just compensation should be included when determining prevailing party for purposes of § 2412.

*Id.* at 1358–59 (emphasis added). Thus, while our holding in *50.50 Acres* does not specifically state that a landowner's valuation testimony must be included in a district court's prevailing party analysis un-

der 28 U.S.C. § 2412(d)(2)(H), its language plainly compels that conclusion.

Yuki's valuation of the 2.6 acres of land taken by the government at $1.25 million qualifies as "*any* value testified to at trial which relates to the question of just compensation." *Id.* (emphasis added). Thus, under our holding in *50.50 Acres,* the district court was required to consider Yuki's testimony in determining whether Canada Connections was a prevailing party. Its failure to do so constitutes reversible error.

## IV

### Conclusion

To further the twin aims of certainty and consistency, Congress has directed courts to apply the highest valuation attested to at trial on behalf of each party for purposes of determining who is a prevailing party under the EAJA. The statute draws no distinction between valuation testimony offered by a witness on behalf of a landowner and valuation testimony offered by a landowner on his own behalf. Rather, it requires the court to look to the highest valuation offered by any witness on behalf of the landowner, including the landowner himself. This conclusion is bolstered by the plain language of the statute, the legislative history behind the statute, and applicable case law. The district court's failure to consider the valuation testimony submitted by Yuki in determining whether Canada Connections was a prevailing party for purposes of awarding fees did not comport with the statutory test set forth in 28 U.S.C. § 2412(d)(2)(H). We therefore VACATE the district court's award of attorney's fees and costs to Canada Connections, and REMAND for further proceedings consistent with this opinion.