**UNITED STATES of America,**
**Plaintiff,**

v.

**CERTAIN LAND SITUATED IN THE CITY OF DETROIT, WAYNE COUNTY, MICHIGAN, and the Detroit International Bridge Company, et al., Defendants.**

**No. 79–CV–73934–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 30, 2003.

---

866

Craig John, Esq., Bloomfield Hills, MI, for Plaintiff.

Ray Hamilton, Esq., Asst. U.S. Atty., Albuqueruqe NM, Matthew Clifford, Esq., Dept. of Justice, Washington DC, for Defendants.

*OPINION AND ORDER REGARDING DEFENDANT DETROIT INTERNATIONAL BRIDGE COMPANY'S MOTION TO CORRECT JUDGMENT ON VERDICT*

ROSEN, District Judge.

## I. INTRODUCTION

The above-captioned eminent domain action came before the Court for a trial by jury on the issue of just compensation due and owing to the Detroit International Bridge Company ("DIBCO") in January–February 2002. At the close of trial, the jury rendered a verdict in favor of DIBCO on two parcels of land owned by it which were condemned by the Government. The jury's verdict awarded DIBCO $398,774.00 for Parcel 1 and $3,699,400.00 for Parcel 3, for a total jury award of $4,098,174.00, and on February 20, 2002, the Clerk of the Court entered a Judgment on the Verdict reflecting these amounts. The Judgment further provided that "The amount of interest shall be determined by the Court at a later date." [*See* Pl. # 452.] The Court subsequently directed the parties to attempt to stipulate to the amount of interest, but the parties were unable to do so. Therefore, the parties were ordered to brief their positions on this matter.

Having reviewed and considered the parties' briefs, supporting exhibits and the applicable law, the Court is now prepared to rule on this matter. This Opinion and Order sets forth the Court's ruling.

## II. *DISCUSSION*

The issues presently before the Court are governed by the Declaration of Taking Act, 40 U.S.C. §§ 258a–258f. In pertinent part, the Act provides as follows:

§ 258a. In any proceeding in any court of the United States... which has been instituted by... the United States for the acquisition of any land... for the public use, the petitioner may file in the cause with the petition.... a declaration of taking... declaring that said lands are taken for the use of the United States....

Upon the filing of said declaration of taking and of the deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title to the said lands... shall vest in the United States, and the right to just compensation for the same shall vest in the persons entitled thereto; and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein, and the said judgment shall include, as part of the just compensation awarded, interest in accordance with section 6 of this Act [40 U.S.C. § 258e–1] on the amount finally awarded as the value of the property as of the date of taking, from said date to the date of payment; but interest shall not be allowed on so much thereof as shall have been paid into the court. No sum so paid into the court shall be charged with commissions or poundage.

Upon the application of the parties in interest, the court may order that the money deposited in the court, or any part thereof, be paid forthwith for or on account of the just compensation to be awarded in said proceeding. If the compensation finally awarded in respect of said lands or any parcel thereof, shall exceed the amount of money so received by any person entitled, the court shall enter judgment against the United States for the amount of the deficiency....

40 U.S.C. § 258a.

█ Thus, the statute makes clear that amounts deposited with the Court as estimated compensation for property taken by the Government and ordered paid the property owner for or on account of the just compensation to be awarded, are to be deducted from the amount finally awarded in the condemnation proceeding, and interest is to be calculated based only upon the deficiency, and not upon any amounts previously paid into the Court.

### A. ADJUSTMENT OF THE PRINCIPAL AMOUNT OF THE JUDGMENT

As indicated, the Judgment on the Verdict as entered by the Clerk of the Court reflects the total amount awarded by the jury, i.e., $4,098,174.00. However, the Judgment on the Verdict failed to reflect sums previously deposited by the Government with the Court as estimated compensation for the taking of the property. On October 11, 1979, the Government deposited with the Court $48,000.00 as estimated compensation due to DIBCO for Parcel 1, and $780,000.00 as estimated compensation for Parcel 3. This total sum of $828,000.00 was paid to DIBCO on February 27, 1980. The parties are in agreement that this sum should be deducted from the principal amount of the Judgment.

The Government further points out that an additional sum of $412,000.00 was deposited with the Court, in an interest-bearing account, on June 9, 1987, and contends that this sum should also be deducted from the principal amount of the Judgment. DIBCO argues that the Court should not deduct this $412,000.00 deposit from the Judgment because it was made "for purposes of possible settlement," and since no settlement was reached and the

matter had to be tried to a jury, Defendant maintains that this sum should simply be regarded as the Government's money. [*See* DIBCO's Reply Brief, p. 5.]. Defendant has cited no law to support its contention nor has the Court independently found any such legal support.

■ It is clear to the Court that the $412,000.00 was deposited as additional estimated compensation for the taking of the DIBCO property. The fact that a settlement was not consummated in 1987 did not make the deposit unavailable and DIBCO has put forth no evidence to suggest that the United States prevented it from applying for withdrawal of the $412,000.00, plus interest, at any time. As indicated above, the Declaration of Taking Act specifically provides that, upon the application of the parties in interest, the court may order that monies deposited in the court "be paid forthwith for or on account of the just compensation to be awarded in said proceeding." 40 U.S.C. § 258a.[1] In accordance with this provision, the Court will enter an Order directing payment of the $412,000.00 to DIBCO, and this sum will also be deducted from the principal amount of the Judgment.[2]

Accordingly, the Court will amend the Judgment in this matter to reflect the Government's previous deposits of $828,000.00 and $412,000.00 with the Court. These sums will be deducted from the jury award and, therefore, the principal amount of the Amended Judgment will be $2,858,174.00. Pursuant to Section 258a of the Declaration of Taking Act, it will be this sum upon which interest will be calculated.

## B. INTEREST CALCULATION

As indicated above, 40 U.S.C. § 258a provides that the judgment entered in a condemnation proceeding "shall include, as part of the just compensation awarded, interest in accordance with section 6 of this Act [§ 258e–1] on the amount finally awarded as the value of the property as of the date of taking, from said date to the date of payment. . . ."

Section 258e–1 provides as follows:

Interest required to be paid under section 258a to 258e–1 of this title shall be calculated by the district court as follows:

(1) Where the period for which interest is owed does not exceed one year, interest shall be calculated for such period from the date of taking at an annual rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of taking.

(2) Where the period for which interest is owed is more than one year, interest for the first year shall be calculated in accordance with paragraph (1) and

---

1. Even assuming *arguendo*, as DIBCO posits, that the Memorandum of Agreement ("MOA") once executed, controlled disbursement of the $412,000.00, DIBCO concedes that the "MOA unraveled" and suggests that the parties' failure to agree upon an "Approved Plan" by January 1, 1992, rendered the terms and conditions of the MOA null and void. (*See* DIBCO's Reply Brief, p. 4). Under these circumstances, the MOA could not serve as a bar to the disbursal of the $412,000.00 after January 1, 1992, and the "unraveling" of the MOA did not convert the $412,000.00 deposited with the Court from estimated compensation to "the Government's money." Indeed, the Declarations of Taking Act, at least, implicitly precludes such a result. *See* 40 U.S.C. § 258a. ("No sum so paid into the court shall be charged with commissions or poundage.")

2. Interest has accrued on the $412,000.00 while in the Court's interest-bearing account, and it, too, will also be disbursed to DIBCO, although the accrued interest will not deducted from the principal amount of judgment.

interest for each additional year shall be calculated on the combined amount of the principal (the amount by which the award of compensation exceeds the deposit referred to in section 258a of this title) and accrued interest at an annual rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the beginning of each year....

40 U.S.C. § 258e-1 (emphasis added).

Defendant DIBCO argues that the statutory formula set forth in § 258e-1 is inadequate to compensate it for the lengthy delay in receiving of compensation for its property and, therefore, the Court should not calculate interest on the judgment using the that formulation. Instead, DIBCO contends that the Court should award prejudgment interest using either (1) an average rate of Moody's Composite Index Rate of (BAA rated) Corporate Bond Yields; or (2) a "blended rate" using the Moody's index for AAA-rated bonds and DIBCO's actual borrowing costs.

In support of its position that the Court should treat the formulation provided in § 258e-1 as "a floor and not a ceiling" on the rate of interest to be applied to the judgment in this case, DIBCO relies principally upon *United States v. 50.50 Acres*, 931 F.2d 1349 (9th Cir.1991), and a number of cases which pre-date the 1986 amendments of the Declaration of Taking Act.

Following a bench trial to determine just compensation in *50.50 Acres*, the district court awarded $4,325,781 for the value of the land taken and awarded interest of 9% per year on the award from the date of taking. The government appealed the 9% per year interest award arguing that the lower court should have followed the statutory formula provided in § 258e-1. The Ninth Circuit rejected the government's contention that the district court

was bound by the statutory interest rate and, relying on two earlier Ninth Circuit decisions, *United States v. 429.59 Acres of Land*, 612 F.2d 459 (9th Cir.1980), and *United States v. Blankinship*, 543 F.2d 1272 (9th Cir.1976), stated that when determining the appropriate rate to be used in condemnation actions, lower courts should first consider whether the statutory rate is unreasonable, and if so, should use an interest rate based on evidence of a diverse group of securities. 931 F.2d at 1355-56.

In reaching this conclusion, the *50.50* court acknowledged that since the decisions in *429.59 Acres* and *Blankinship*, the Declaration of Taking Act had been amended to provide the statutory scheme now embodied in § 258e-1. Prior to the 1986 amendments, the Act merely provided that the judgment entered in a condemnation action "shall include, as part of the just compensation awarded, interest at the rate of 6 per centum per annum." *See* Historical and Statutory Notes following 40 U.S.C.A. § 258a, Act of Feb. 26, 1931, c 307, 46 Stat. 1421; and 1986 Amendments, Pub.L. 99-656.

In *50.50 Acres*, the Government argued that while the old statutory rate could only be a floor for interest awards, Congress intended that the new statute act as a ceiling. Although the Ninth Circuit acknowledged that the new statute was enacted in 1986 "in response to the courts' rejection of the 6% flat rate" and "attempts to create a variable interest rate reflective of market changes," 931 F.2d at 1355, without much discussion, the court rejected the Government's argument stating that "nothing in the statute can change the Supreme Court's determination that just compensation 'is a judicial[,] not a legislative[,] function.'" *Id.* (quoting *Monongahela Navigation Co. v. United*

*States,* 148 U.S. 312, 327, 13 S.Ct. 622, 626, 37 L.Ed. 463 (1893)).[3]

In *50.50 Acres,* the district court failed to first determine that the statutory rate was unreasonable. Therefore, the appellate court remanded the case to the district court "for a determination of whether the new statutory formula provides a 'proper and reasonable' interest rate, and if not, application of an interest rate based on evidence of a diverse group of securities, including Treasury bills." *Id.* at 1356.

It is based upon *50.50 Acres* and the cases cited therein that DIBCO argues in this case that the Court should not apply the interest calculation formula set forth in § 258e–1 and instead use its proposed Moody's BAA bond rate or a blended rate. The Court declines to follow DIBCO's proposal for several reasons.

First, *50.50 Acres* is a Ninth Circuit decision and, of course, is not controlling precedent in this Circuit. Second, all of the other cases relied upon by Defendant pre-date the 1986 amendments of the Declaration of Taking Act which added § 258e–1 to the statute and set out the variable interest rate formulation now provided in that section. Third, and most importantly, the amended Act unambiguously speaks in mandatory language: "Interest required to be paid under section[ ] 258a... of this title *shall* be calculated by the district court as follows...." 40 U.S.C. § 258e–1.

The legislative history of this Act makes clear that the intent of Congress in enacting the 1986 amendments was to provide for uniformity in the district courts in their determination of the appropriate rate of interest to be applied in condemnation cases. As stated in the House Judiciary Committee's Report which accompanied the bill (H.R.5363) which ultimately became law:

> The purpose of H.R. 5363 is to amend the interest provisions of the Declaration of Taking Act (40 U.S.C. 258a) **to establish a uniform statutory rate of interest in eminent domain cases.**

*See* H.R. Rep. 99–914, *reprinted in* 1986 U.S.Code Cong. & Admin. News 6202 (emphasis added).

The Report further noted that "this legislation will solve a long-standing problem encountered in eminent domain cases brought in district courts under the Declaration of Taking Act regarding the appropriate rate of interest." *Id.* 6203. As explained in the House Report, the Declaration of Taking Act, which was enacted in 1931, provided for interest at a rate of 6 percent per annum. This interest rate had not been changed since the statute was enacted. *Id.* In endorsing H.R. 5363, the Congressional Budget Office noted:

> Currently the interest rate applicable to the taking of real estate is set by law at 6 percent. The courts generally consider this 6 percent rate to be a minimum, and usually apply a higher interest rate (based on market rates). **This bill would make their application uniform and consistent among the courts. It**

---

**3.** The Ninth Circuit's reliance on *Monongahela* in this regard is puzzling. In *Monongahela,* Congress authorized the condemnation of the property owner's lock and dam but added a proviso that in determining the award, the property owner's franchise to collect tolls was not to be considered. It was in the context of rejecting this proviso that the Supreme Court said the right to compensation was a judicial, not a legislative question. The question of interest, however, relates not to the amount of the award itself but to preserving the value of the award. While an award reflects the many unique characteristics of the particular parcel taken, an interest rate is less unique or particularized. *See State v. Jim Lupient Oldsmobile Co.,* 509 N.W.2d 361 (Minn.1993) (Simonett, J., concurring specially to comment on what is a "judicial question").

**would also eliminate the treatment of the interest rate as a question of fact to be determined by the courts.**

*Id.* at 6204 (emphasis added).

■ Given the mandatory language of the statute and the very clear legislative history, the Court finds that applying any rate other than the statutory rate formulated in § 258e–1 would contravene the clear intent of Congress. The Court is unaware of any precedent or doctrine which provides a sound jurisprudential rationale that would permit the Court to ignore such a clear legislative mandate. The fact that determining just compensation is a judicial function does not render calculation of interest on that compensation a judicial function where Congress has clearly indicated its intention to fully occupy the field in this area.

But, even if the Court were to follow the Ninth Circuit's *50.50 Acres* ruling, the outcome would be the same. As the *50.50 Acres* court instructed, the initial determination for the district courts to make under its ruling is to determine "whether the new statutory formula provides a 'proper and reasonable' interest rate." It is only if the court determines that the statutory rate is unreasonable that any consideration may given to other methods to establish a rate of interest.

Defendant's protestations to the contrary notwithstanding, the Court finds that the statutory rate of interest set forth in

§ 258e–1 provides DIBCO what a reasonable and prudent investor would earn while investing though guaranteeing the safety of the principal. *See 50.50 Acres, supra* (quoting *United States v. 429.59 Acres of Land,* 612 F.2d at 465). The interest rate provided in § 258e–1 is not a fixed rate; it is a fluctuating rate that tracks the upward and downward movement of market interest rates, generally. Thus, this method of determining interest is a market-driven rate. Second, an investment in U.S. Treasury securities is safe because an investor will not lose the principal underlying the investment, as he would risk doing in the stock or bond market. Therefore, the statutory interest rate provided in § 258e–1 satisfies the Ninth Circuit's test: investing in U.S. Treasury bills "produces a reasonable return while maintaining safety of the principal." *429.59 Acres, supra,* 612 F.2d at 465.

### CONCLUSION

For all of the foregoing reasons, the Court determines that interest on the Judgment in this case shall be determined by application of the statutory rate of interest provided in 40 U.S.C. § 258e–1(2). Interest shall be calculated on the principal amount of $2,858,174.00 and, as provided in § 258a, interest will accrue from the date of taking, i.e., October 11, 1979, until the date of payment.[4]

SO ORDERED.[5]

---

4. As the statute calls for interest to accrue from the date of taking *to the date of payment,* to the extent that DIBCO requested inclusion of "pre-*judgment*" interest, that request is rejected. The effect of the statute is to conjoin what otherwise would be pre-and post-judgment interest (which, pursuant to 28 U.S.C. § 1961, would be computed using the same "weekly average 1–year constant maturity Treasury yield" as the Declaration of Taking Act.)

5. Now that the Court has established the appropriate method for calculating interest, the parties shall follow the statutory formula and this Order and, upon setting a date of payment, submit to the Court a stipulated order reflecting the amount of interest to be paid to DIBCO. Failure of the parties to agree on such an amount will result in the imposition of sanctions against the party whose position does not prevail if the Court is required to adjudicate the dispute unless the non-prevailing party's position is supported by good faith legal and/or factual argument.

## 872

### AMENDED JUDGMENT

The Court having this date, entered an Opinion and Order regarding Defendant Detroit International Bridge Company's Motion to Correct the Judgment on the Verdict entered on February 20, 2002, and being otherwise fully advised in the premises,

NOW, THEREFORE,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that an Amended Judgment is entered in favor of the Detroit International Bridge Company in the total amount of $2,858,174.00, plus interest at the statutory rate of interest provided in 40 U.S.C. § 258e–1(2), from October 11, 1979 to the date of payment.