Estado Libre Asociado de Puerto Rico, demandante y recurrido, *v.* Rexco Industries, Inc., demandado y recurrente.

*Número:* RE-90-511          *Resuelto:* 6 de diciembre de 1994

*Ramón Lloveras Otero*, abogado del recurrente; *Anabelle Rodríguez, Procuradora General; Juan R. Deliz Román* y *Héctor Clemente Delgado, Procuradores Generales Auxiliares*, abogados del Estado Libre Asociado de Puerto Rico.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

# I

El 24 de noviembre de 1986, el Estado Libre Asociado de Puerto Rico solicitó judicialmente la incautación de una parcela de 1.126 cuerdas y la expropiación de un edificio multipisos destinado al arrendamiento de oficinas. Para esa fecha, el edificio estaba ocupado por la Puerto Rico Telephone Company y el Chase Manhattan Bank. Como justa compensación, consignó $6,000,000 en el Tribunal Superior, Sala de San Juan, conforme a la tasación realizada por los peritos de la Puerto Rico Telephone Company.

Luego de varios incidentes procesales, el Estado enmendó y aumentó esa cuantía a $6,447,000. El 2 de diciembre de 1986, el tribunal (Hon. Carlos Polo, Juez) decretó la expropiación y que el título de esas propiedades quedaba investido en el Estado. En ese dictamen señaló que la cuantía de justa compensación estaba sujeta al resultado de la prueba que había de presentarse.

En una vista previa al efecto, el 15 de junio de 1990 dicho foro emitió una sentencia y concluyó que la justa compensación ascendía a $7,094,570.20. Impuso al Estado la obligación de pagar $647,570.20, que era la diferencia entre el valor real del inmueble expropiado y la cantidad de $7,094,570.20 consignada, *más los intereses al seis por ciento (6%) anual a tenor con el Art. 4 de la Ley de Expropiación Forzosa, Ley de 12 de marzo de 1903, según enmendada, 32 L.P.R.A. sec. 2905 et seq.*

No conforme, a solicitud de Rexco Industries, Inc., acordamos revisar[1] el señalamiento de que el tribunal erró al

---

[1] En su revisión planteó tres (3) señalamientos adicionales, a saber:

"A. Erró el Tribunal al valorar en $7,094,570.20 la propiedad expropiada sin expresar fundamento de hecho alguno, siendo suma tan precisa, contraria a la preponderancia de la prueba presentada. Tres de los cuatro peritos (dos de ellos de la propia Puerto Rico Telephone Company), testificaron contrario a esta suma. Todos ellos testificando un valor de sobre $9,000,000.00 para la propiedad expropiada.

"B. Erró el Tribunal al no conceder costas y gastos a pesar de Orden de una compensación de $647,570.20 mayor que la consignada.

no imponer intereses en virtud de la Regla 44.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III,(²) y que esa negativa representa una incautación no compensada.

## II

■■■ El Art. II, Sec. 9 de nuestra Constitución, L.P.R.A., Tomo 1, ed. 1982, pág. 296, dispone que "[n]o se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley". Como parte integral de la justa compensación a concederse, la Ley de Expropiación Forzosa ordena el pago de "intereses al tipo anual de seis (6) por ciento sobre la cantidad finalmente concedida como valor de la propiedad a contar desde la fecha de la adquisición, y desde dicha fecha hasta la fecha

---

"D. Erró el Tribunal al no compensar a la parte con interés por daños torticeros causados por la parte expropiante ascendentes a $200,000.00." Escrito en cumplimiento de orden, pág. 3.

Nuestra resolución aclaró que la expedición del auto era únicamente para evaluar el señalamiento de los intereses. En reconsideración —Resolución de 27 de marzo de 1992— así lo reiteramos; ahora lo reafirmamos.

(²) Dispone:

"(a) Se incluirán intereses al tipo que fije por reglamento la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras y que esté en vigor al momento de dictarse la sentencia, en toda sentencia que ordena el pago de dinero, a computarse sobre la cuantía de la sentencia desde la fecha en que se dictó la sentencia y hasta que ésta sea satisfecha incluyendo costas y honorarios de abogado. El tipo de interés se hará constar en la sentencia.

"La Junta fijará y revisará periódicamente la tasa de interés por sentencia tomando en consideración el movimiento en el mercado y con el objetivo de desalentar la radicación de demandas frívolas, evitar la posposición irrazonable en el cumplimiento de las obligaciones existentes y estimular el pago de las sentencias en el menor tiempo posible.

"(b) El tribunal también impondrá a la parte que haya procedido con temeridad el pago de interés al tipo que haya fijado la Junta en virtud del inciso (a) de esta sección y que esté en vigor al momento de dictarse la sentencia desde que haya surgido la causa de acción en todo caso de cobro de dinero y desdé la radicación de la demanda, en caso de daños y perjuicios, y hasta la fecha en que se dicte sentencia a computarse sobre la cuantía de la sentencia, excepto cuando la parte demandada sea el Estado Libre Asociado de Puerto Rico, sus municipios, agencias, instrumentalidades o funcionarios en su carácter oficial. El tipo de interés se hará constar en la sentencia." 32 L.P.R.A. Ap. III.

del pago". 32 L.P.R.A. sec. 2907. Ese límite en la tasa de interés anual es el que Rexco Industries Inc. cuestiona hoy.

Inicialmente, este tipo de legislación no proveía para el pago de interés por esa diferencia. La Ley Núm. 2 de 1ro de abril de 1941 (32 L.P.R.A. secs. 2905 y 2907) lo incluyó por la tardanza del Estado en compensar en su totalidad. En lo pertinente, disponía:

> ... dicha compensación deberá determinarse y adjudicarse en dicho procedimiento, y decretarse por la sentencia que recaiga en el mismo, *debiendo la sentencia incluir, como parte de la justa compensación concedida, intereses al tipo anual de seis (6) por ciento sobre la cantidad finalmente concedida como valor de la propiedad a contar desde la fecha de la adquisición, y desde dicha fecha hasta la fecha del pago*; pero los intereses no deberán concederse sobre aquella parte de dicha cantidad que haya sido depositada y pagada en [la corte]. (Énfasis suplido.) 32 L.P.R.A. sec. 2907.

Actualmente la Ley de Expropiación Forzosa visualiza el mismo tipo. 32 L.P.R.A. sec. 2908.

El trasfondo de la legislación federal que implantaba en Estados Unidos el mandato constitucional sobre la expropiación forzosa —*Declaration of Taking Act*, 40 U.S.C. sec. 258(a)— en su origen, tenía un lenguaje sustancialmente igual al de las Secs. 5(a) y 5(b) de nuestra ley incluso el interés al seis por ciento (6%).

Sin embargo, en época reciente los tribunales federales resolvieron que dicha tasa tenía que ser razonable; con el tiempo decidieron que era un mínimo. *Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1 (1984); *United States v. 125.2 Acres of Land*, 732 F.2d 239, 244–245 (1er Cir. 1984); *Washington Metro. Area T.A. v. One Parcel of Land*, 706 F.2d 1312, 1322 (4to Cir. 1983); *U.S. v. 329.73 Acres, Grenada and Yalobusha Ctys.*, 704 F.2d 800 (5to Cir. 1983); *United States v. 50 Acres of Land*, 706 F.2d 1356, 1364 (5to Cir. 1983); *Antoine v. United States*, 710 F.2d 477, 480 (8vo Cir. 1983); *United States v. 2,175.86 Acres of Land, Etc.*, 696 F.2d 351, 354 (5to Cir. 1983); *United States v. 429.59*

*Acres of Land*, 612 F.2d 459 (9no Cir. 1980); *Miller v. United States*, 620 F.2d 812 (Ct. Cl. 1980); *Georgia-Pacific Corp. v. United States*, 640 F.2d 328 (Ct. Cl. 1980); *Phelps v. United States*, 274 U.S. 341, 344 (1927); *Seaboard Air Line Ry. v. U.S.*, 261 U.S. 299, 304 (1922); *United States v. 319.46 Acres of Land More or Less*, 508 F. Supp. 288, 290 (W.D.Okl. 1981); *United States v. Blankinship*, 543 F.2d 1272, 1275 (9no Cir. 1976).

■ Como resultado, el 27 de septiembre de 1986, el Congreso derogó la tasa del seis por ciento (6%) dispuesta en el *Declaration of Taking Act*, Pub.L. No. 99656.[3] Al contrario, nuestra Asamblea Legislativa no ha modificado aún ese tipo.

## III

■ De entrada, reiteramos la norma de un siglo de vigencia en cuanto a que la determinación de la justa compensación es esencialmente un ejercicio judicial. El Tribunal Supremo federal resolvió:

> [La justa compensación] es una controversia judicial y no legislativa. La legislatura puede determinar qué propiedad privada se necesita para propósitos públicos —ésta es una controversia de carácter político y legislativo; pero cuando se ha ordenado la expropiación, entonces la controversia sobre la compensación es judicial. ... La constitución ha declarado que se tiene que pagar justa compensación y que su determinación

---

[3] Del historial congresional surge:

"Actualmente, la tasa de interés aplicable a las expropiaciones de propiedad inmueble es establecido por ley en seis por ciento. *Los tribunales generalmente han considerado esa tasa del 6 por ciento como un mínimo, y usualmente aplican una tasa de interés mayor (basada en las tasas del mercado).* Esta ley establecería explícitamente este uso de las tasas del mercado y haría su aplicación uniforme y consistente, entre los tribunales. Además, dominaría el que se tratara la tasa de interés como una controversia de hechos a determinarse por los tribunales." (Traducción nuestra y énfasis suplido.) *U.S.Code Congressional and Administratives News*, 99th Congress, 2d Sess., T. 6, pág. 6205.

Posteriormente, el Congreso dispuso que la tasa de interés a pagarse se determinaría utilizando una fórmula que incluye bonos federales vencederos a un (1) año. 40 U.S.C. Sec. 258e–1.

es una cuestión que le compete a los tribunales. (Traducción nuestra.) *Monongahela Navigat'n Co. v. United States*, 148 U.S. 312, 327 (1893); *U.S. v. 50.50 Acres of Land*, 931 F.2d 1349 (9no Cir. 1991).

Con esta perspectiva en mente, la jurisprudencia federal recalca el principio equitativo de que la compensación por una propiedad expropiada es aquella "que ponga al dueño en una posición pecuniaria tan buena a la que estaría si la propiedad no se hubiese expropiado". (Traducción nuestra.) *Seaboard Air Line Ry. v. United States*, supra, pág. 304. El pago de intereses es una parte integral de la justa compensación al amparo del mandato constitucional de justa compensación. *United States v. 125.2 Acres of Land*, supra; *Antoine v. United States*, supra; *Washington Metro Area T.A. v. One Parcel of Land*, supra; *United States v. 319.46 Acres of Land*, supra; *United States v. Blankinship*, supra; *Catlin v. United States*, 324 U.S. 229, 240 (1945); *Burns v. United States*, 274 U.S. 328 (1926).

Como la economía no es estática, cuando la tasa prevaleciente en el mercado sobrepasa este límite legal del seis por ciento (6%), se menoscaba la compensación pagada al dueño. Por otro lado, si la tasa del mercado es menor a la legal, se le impone al Estado satisfacer una suma mayor a la que, constitucionalmente, tiene que pagar. Ambas situaciones reflejan graves incongruencias entre la ley y la Constitución. No encontramos argumentos de peso que justifiquen al Estado compensar una cantidad mayor o menor a la que el dueño sería acreedor si se hubiese pagado la totalidad de la justa compensación al iniciarse los procedimientos judiciales.

Frente a esta realidad, el Estado nos argumenta que la Ley de Expropiación Forzosa es *especial* y sus disposiciones deben prevalecer sobre cualquier otro precepto de ley general como lo es la Regla 44.3 de Procedimiento Civil, *supra*. Aunque en principio coincidimos con ese enfoque, cuando existen deficiencias en la ley especial, nues-

tro deber es acudir a las disposiciones de ley general para subsanarlas. Art. 12 del Código Civil, 31 L.P.R.A. sec. 12. Con ese objetivo en mente, es ineludible concluir que la tasa de seis por ciento (6%) en nuestra Ley de Expropiación Forzosa tiene que interpretarse en conjunto con otras disposiciones *in pari materia* de carácter general.

## IV

■ Al respecto, para fines adjudicativos la Regla 44.3 de Procedimiento Civil, *supra*, en cuanto incorpora el Reglamento Núm. 78-1 de la Oficina del Comisionado de Instituciones Financieras sobre intereses sobre sentencias finales y firmes, es crucial. Dicho reglamento visualiza los intereses a base de las "fluctuaciones en el mercado" *local*, fenómeno dinámico que por experiencia prima facie se apuntala en criterios razonables.

■ En consecuencia, hasta tanto la Asamblea Legislativa *enmiende la ley de acuerdo con estos pronunciamientos*, resolvemos que la diferencia entre la cantidad que se determine finalmente como justa compensación en una expropiación y la que consignó inicialmente el Estado, hay que sumárseles los intereses que surjan del aludido Reglamento 78-1 de la Oficina del Comisionado de Instituciones Financieras.([4]) Así cumplimos el mandato constitucional de

---

(4)    OFICINA DEL COMISIONADO DE INSTITUCIONES FINANCIERAS
INTERESES SOBRE SENTENCIAS

| FECHAS | GOBIERNO | OTROS%w |
|---|---|---|
| Hasta julio 5 de 1985 | 6.00 | 6.00 |
| De Julio 6 de 1985 a Dic. 31 de 1988 | 12.00 | 12.00 |
| Enero 1989 a junio 1989 | 8.50 | 11.50 |
| Julio 1989 a diciembre 1989 | 8.50 | 12.50 |
| Enero 1990 a junio 1990 | 8.00 | 11.50 |
| Julio 1990 a diciembre 1990 | 7.50 | 11.00 |
| Enero 1991 a junio 1991 | 7.00 | 11.00 |

justa compensación consagrado en el Art. II, Sec. 9 de nuestra Constitución, *supra*.(5) *Arenas Procesadas, Inc. v. E.L.A.*, 132 D.P.R. 593 (1993); *Culebra Enterprises Corp. v. E.L.A.*, 127 D.P.R. 943 (1991); *E.L.A. v. Registrador*, 111 D.P.R. 117 (1981); *E.L.A. v. Rosso*, 95 D.P.R. 501, 536 (1967); *M. Mercado e Hijos v. Tribl. Superior*, 85 D.P.R. 370, 375–376 (1962).

Finalmente, esta decisión y el Reglamento 78-1, *supra*, aplicarán a todo caso de expropiación en trámite ante los tribunales y en el cual aún no haya recaído *sentencia final y firme*. Así seguimos el mismo enfoque doctrinario expuesto en *Riley v. Rodríguez de Pacheco*, 119 D.P.R. 762 (1987), y *Monrozeau v. Srio. de Justicia*, 121 D.P.R. 885, 889 (1988), en torno al historial legislativo de la enmienda a la Regla 44.3 de Procedimiento Civil, *supra*, que aplicó el Reglamento 78-1, *supra*, a las sentencias dictadas no finales ni firmes.

*Se dictará la correspondiente sentencia.*

El Juez Asociado Señor Rebollo López emitió una opinión disidente, a la cual se unió el Juez Asociado Señor Hernández Denton.

---

(5) Consistentemente hemos reconocido "los últimos desarrollos en la jurisprudencia del Tribunal Supremo federal que establece el contenido mínimo de las garantías constitucionales en situaciones análogas". *Arenas Procesadas, Inc. v. E.L.A.*, 132 D.P.R. 593, 602 (1993).

Aunque la Quinta Enmienda no aplica directamente a los estados —*Barron v. Baltimore*, 32 U.S. 242 (1833)— desde finales del siglo pasado el Tribunal Supremo federal resolvió que el debido proceso de ley de la Decimocuarta Enmienda prohíbe que éstos expropien propiedades privadas sin el pago de una compensación justa. *Chicago, Burlington & c. R'D v. Chicago*, 166 U.S. 226, 241 (1897); *Missouri Pacific Railway v. Nebraska*, 164 U.S. 403, 417 (1896).

— O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López, a la cual se une el Juez Asociado Señor Hernández Denton.

Como surge de la opinión mayoritaria, las Secs. 5(a) y 5(b) de la Ley de Expropiación Forzosa —32 L.P.R.A. secs. 2907 y 2908— disponen que cuando la suma de dinero que finalmente establece el foro judicial como "justa compensación" de una propiedad expropiada por el Estado *es mayor* que la cantidad de dinero que éste originalmente consignó en el tribunal al instar el procedimiento de expropiación, el Estado viene en la obligación de pagar intereses, a razón del seis (6) por ciento anual, sobre *la diferencia* entre ambas sumas de dinero.

En el día de hoy, una mayoría de los integrantes del Tribunal —*sin hacer determinación expresa alguna sobre inconstitucionalidad respecto a las mencionadas Secs. 5(a) y 5(b)*— resuelve que los foros de instancia deben hacer *caso omiso* de lo dispuesto por las citadas secciones de ley y que, por el contrario, deben aplicar a dicha suma de dinero el por ciento de interés contemplado en la Regla 44.3 de las Reglas de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III); esto es, los intereses que surjan del Reglamento 78-1 de la Oficina del Comisionado de Instituciones Financieras.

*No* estamos de acuerdo. Ello por varias razones, las cuales pasamos a exponer.

I

Es norma reiterada, y trillada, que una sección o artículo de una ley de índole o carácter general *no* puede prevalecer, o derogar, una sección o artículo de una ley especial *a menos que* tal derogación se consigne expresamente o esa sea la clara voluntad legislativa, *McCrillis v. Aut. Na-*

*vieras de P.R.*, 123 D.P.R. 113, 130 (1989); *Sierra v. Tribl. Superior*, 75 D.P.R. 841, 846–847 (1954); *Vázquez v. Corte*, 65 D.P.R. 598, 603 (1946); *Tilén v. Mena*, 24 D.P.R. 815, 817 (1917); mucho menos, *naturalmente*, cuando se trata de una disposición reglamentaria, de índole general, frente a un estatuto especial.

Debe mantenerse presente que, en relación con la situación hoy ante nuestra consideración, la Asamblea Legislativa, al enmendar la Regla 44.3 de Procedimiento Civil, ante, en 1988 con el propósito de incorporar a la misma el concepto de "tasa de interés por sentencia", *no* hizo constar expresamente el propósito de enmendar a esos efectos la Ley de Expropiación Forzosa, 32 L.P.R.A. sec. 2901 *et seq.*; tampoco surge que esa fuera la clara voluntad legislativa.

Ante esta situación, *y debido a que las derogaciones tácitas no son favorecidas*, puede concluirse que resulta claro que, *en principio*, el interés a imponerse por sentencia en casos de expropiación forzosa en nuestra jurisdicción debe regirse por las propias disposiciones de la Ley de Expropiación Forzosa y no por lo dispuesto por la Regla 44.3 de Procedimiento Civil, ante. *Director I.C.P. v. Fitzgerald, etc.*, 130 D.P.R. 46 (1992); *Aponte v. Srio de Hacienda, E.L.A.*, 125 D.P.R. 610 (1990); *McCrillis v. Aut. Navieras de P.R.*, ante. Véase, en adición, R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed. rev., San Juan, Pubs. J.T.S., 1987, Vol. I, pág. 421.

## II

Conocido es que la sabiduría o conveniencia de una actuación legislativa es algo que *no* está sujeto a nuestro poder de revisión judicial. Véase *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.*, 133 D.P.R. 521 (1993). Dicho de otra forma, en esta clase de situaciones nuestra determinación tiene que, *por necesidad*, ceñirse a declarar válido o inconstitucional el estatuto en controversia. *Esto es, dependiendo de la de-*

*terminación judicial que a esos efectos se haga, el estatuto será o no puesto en vigor por el foro judicial.*

Resulta, en consecuencia, curioso que el Tribunal, sin hacer determinación expresa alguna sobre la validez constitucional de las citadas Secs. 5(a) y 5(b) de la Ley de Expropiación Forzosa, *le ordene a los foros de instancia hacer caso omiso de las disposiciones de las mismas.* ¿Puede este Tribunal, sin hacer determinación alguna sobre la inconstitucionalidad de una ley, ordenar que no se obedezcan *en absoluto* las disposiciones de un estatuto en particular? *Creemos que no.*

Resulta, en consecuencia, mandatorio cuestionarnos si las referidas Secs. 5(a) y 5(b) de la Ley de Expropiación Forzosa son inconstitucionales por violar las mismas las disposiciones sobre "justa compensación" contenidas en la Sec. 9 del Art. II de nuestra Constitución, L.P.R.A., Tomo 1, y las de la Quinta Enmienda de la Constitución federal.([1])

### III

La facultad de tomar, o expropiar, propiedad privada para fines públicos es uno de los poderes inherentes que posee el Estado. Dicha facultad, sin embargo, está "limitada" por la obligación que la Constitución le impone al Estado de pagar una justa compensación, o valor, por la propiedad privada y por el deber de actuar, al ejercitar dicha facultad, conforme al procedimiento provisto por ley. *E.L.A. v. Soc. Civil Agrícola e Industrial,* 104 D.P.R. 392 (1975).

Nuestro ordenamiento, con el propósito de garantizar el pago de una justa compensación, establece que cuando la

---

([1]) El referido principio de "justa compensación" también lo exige el Art. 355 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 1113, el cual establece que:

"Nadie podrá ser privado de su propiedad sino por autoridad competente, por causa justificada de utilidad pública o beneficio social, y mediante el pago de una justa compensación que se fijará en la forma provista por ley."

cantidad determinada por el foro judicial, como justa compensación, es mayor que la suma originalmente estimada, y depositada en corte, por el Estado, éste debe pagar adicionalmente, como parte de ese justo valor, intereses sobre la diferencia entre ambas sumas de dinero, al tipo anual del seis (6) por ciento. 32 L.P.R.A. secs. 2907 y 2908.

Dicho pago de intereses, como correctamente se dice en la opinión mayoritaria, pág. 689, "es una *parte integral* de la *justa compensación* al amparo del mandato constitucional ...". (Énfasis suplido.) *Ahora bien, ¿cuál tasa de interés es "necesaria" desde un punto de vista constitucional? Esto es, ¿cuál tasa de intereses cumple con el requisito constitucional de justa compensación?*

En nuestra opinión, y así se ha resuelto en la jurisdicción federal, *se satisface el requisito de justa compensación* —exigido tanto por nuestra Constitución como por la Constitución federal— *pagando aquella tasa de intereses que resulte ser "razonable";* determinación judicial de "razonabilidad" *que dependerá de las circunstancias particulares económicas y financieras que prevalezcan en el momento en que el foro judicial hace dicha determinación y sobre la cual dicho foro vendrá obligado a recibir prueba en cada caso.* Véanse: *Confederated Salish and Kootenai Tribes v. United States*, 437 F.2d 458 (Ct. Cl. 1971); *United States v. 100 Acres of Land, Etc., Marin Cty., Cal.*, 468 F.2d 1261 (9no Cir.), *cert.* denegado, 414 U.S. 822 (1972); *Pitcairn v. United States*, 547 F.2d 1106, 1120–1124 (Ct. Cl. 1976), *cert.* denegado, 434 U.S. 1051 (1978). Véase, en adición: R.I. Mirvis, *Method of Determining Rate of Interest Allowed on Award to Owner of Property Taken by United States in Eminent Domain Proceeding*, 56 A.L.R. Fed. 477, 481 (1982). *En cuanto a nuestra jurisdicción, ello significa que el foro judicial viene en la obligación de determinar, en relación con el caso específico ante su consideración, si el seis (6) por ciento que establecen las Secs. 5(a) y 5(b) de la Ley de Expropiación Forzosa, ante, es o no "razonable"; ello a la*

*luz de las condiciones financieras imperantes en ese momento determinado.*

La mayoría, por su parte, *así no piensa.* Descarta *totalmente* la aplicación de las secciones pertinentes de la Ley de Expropiación Forzosa por razón de que:

> Como la economía no es estática, cuando la tasa prevaleciente en el mercado sobrepasa este límite legal del seis por ciento (6%), *se menoscaba* la compensación pagada al dueño. *Por otro lado,* si la tasa del mercado *es menor* a la legal, se le impone al Estado satisfacer una suma mayor a la que, constitucionalmente, tiene que pagar. *Ambas situaciones reflejan graves incongruencias entre la ley y la Constitución.* (Énfasis suplido.) Opinión mayoritaria, pág. 689.

Lo expresado, como resulta obvio, *no* es enteramente correcto. Únicamente la primera de las alternativas, o situaciones, resulta contraria a la Constitución; esto es, cuando el seis (6) por ciento resulta ser *menor* a la tasa de interés "razonable". Ello por razón de que se infringe, *en esa situación,* el requisito de "justa compensación". En la *segunda* de las situaciones, aquella en que el seis (6) por ciento que dispone la Ley de Expropiación Forzosa resulta *mayor* que el por ciento "razonable", el estatuto es constitucional ya que se puede, *válidamente,* argumentar que la situación o "incongruencia" *responde a la voluntad del legislador,* la cual venimos obligados a obedecer e implantar. *P.I.P. v. C.E.E.,* 120 D.P.R. 580 (1988).

Por otro lado, sabido es que los "intereses" han sido definidos como "el precio que se paga por el uso del dinero"; ese "precio" ha sido comparado a la *renta* de la tierra concebida como ingreso neto procedente de ésta y a la del salario como remuneración del trabajo.[2]

Ello no obstante, debe mantenerse presente que el derecho constitucional a recibir renta sobre la propiedad *no* implica, *de por sí,* el derecho a recibir *determinada* renta

---

[2] Véase la opinión concurrente del Juez Asociado Señor Negrón García en *Gallardo v. Petitón y V.T.N., Inc.,* 132 D.P.R. 39 (1992).

en particular, *ni* el derecho a que la misma esté exenta de reglamentación por parte del Estado. Véanse: *Pennel v. San José*, 485 U.S. 1 (1988); *Bowles v. Willingham*, 321 U.S. 503, 516–518 (1944); *Euclid v. Amber Co.*, 272 U.S. 365 (1926). Véanse, en adición: *Blanes v. Tribunal de Distrito*, 71 D.P.R. 325 (1950); *Cintrón v. Corte Municipal*, 67 D.P.R. 793 (1947).

De todas maneras, tenemos serias dudas en cuanto a la "consistencia" del argumento de la mayoría de los integrantes del Tribunal respecto a este punto. *El mismo resulta ser, a nuestro juicio, circularmente erróneo.* A juicio de la Mayoría, la imposición de una tasa de interés "estatutaria" que es distinta a la tasa prevaleciente en el "mercado" resulta ser improcedente por cuanto, precisamente, no refleja el interés prevaleciente en el "mercado". Conforme a la Mayoría, la tasa prevaleciente en el "mercado" es la que surge del Reglamento 78-1 de la Oficina del Comisionado de Instituciones Financieras.

*Se olvida el Tribunal que esa tasa de interés que surge del citado Reglamento 78-1 es una que no responde exclusivamente a las "fuerzas del mercado".* Ello así surge de la Sec. 2 del referido Reglamento 78-1, la cual *claramente establece* que, debido a que la Regla 44.3 de Procedimiento Civil, ante, tiene "el propósito de desalentar los pleitos frívolos e incentivar el pago de las sentencias", *procede —al fijar la tasa de interés— añadirle a ésta "un 'margen punitivo' al costo de fondos para el deudor por sentencia, de manera que la tasa resultante mueva a dicho deudor al pago de la misma".*[3]

Dicho de la manera más sencilla, la tasa de interés que

---

[3] La referida Sec. 2 del citado Reglamento 78-1 establece, *en lo pertinente*, que:

"La Regla 44.3, según enmendada, dispone que la Junta Financiera fijará la tasa de interés pagadera sobre la cuantía de toda sentencia (incluyendo costas y honorarios de abogado) considerando las fluctuaciones en el mercado y con el propósito de desalentar los pleitos frívolos e incentivar el pago de las sentencias. *Este mandato legislativo solo se cumple añadiendo un "margen punitivo" al costo de fondos para el deudor por sentencia, de manera que la tasa resultante mueva a dicho deudor al pago de la misma."* (Énfasis suplido.)

periódicamente fija la Oficina del Comisionado de Institu-
ciones Financieras, a través del citado Reglamento 78-1, *no
representa fielmente la tasa de interés prevaleciente en el
mercado*, pues dicha Oficina le añade a la misma un "mar-
gen punitivo". Por lo tanto, si utilizamos dicha tasa de in-
terés en casos de expropiaciones, *le estaríamos concediendo
al dueño de la propiedad expropiada una tasa de interés
mayor a la que tiene derecho*; ello en vista del hecho de que
el propósito detrás del pago de intereses en casos de expro-
piaciones lo es, en palabras de la mayoría, pág. 689, ci-
tando a *Seaboard Air Line Ry. v. United States*, 261 U.S.
299, 304 (1922), poner " 'al dueño en una posición pecunia-
ria tan buena a la que estaría si la propiedad no se hubiese
expropiado' ", *y no la de penalizar al Estado*.

*En resumen*, tenemos que la tasa de interés —el seis (6)
por ciento— que establecen las Secs. 5(a) y 5(b) de la Ley
de Expropiación Forzosa, ante, *puede, o no, resultar in-
constitucional en su aplicación; ello por violar el mandato
constitucional de "justa compensación"*. Dicha tasa será
constitucional, *y obligatoria*, en aquellas ocasiones en que,
a la luz de las condiciones financieras imperantes en el
mercado en un momento determinado, sea *mayor* que la
tasa de interés "razonable". Por otro lado, será inconstitu-
cional, *e inoperante*, cuando el referido seis (6) por ciento
resulte ser *menor* que dicha tasa de interés "razonable".[4]

La acción del Tribunal, de aplicar siempre a dichas si-
tuaciones la tasa de interés que en un momento determi-
nado establezca el Reglamento 78-1 de la Oficina del Co-
misionado de Instituciones Financieras, *resulta ser
totalmente errónea*. Ello por razón de que, como hemos
visto, dicha tasa de interés *no* refleja fielmente la tasa de

---

[4] Hemos resuelto que una ley, constitucional de su faz, puede resultar incons-
titucional *en su aplicación. Rodríguez v. Depto. Servicios Sociales*, 132 D.P.R. 617
(1993).

interés prevaleciente en el mercado por razón de que la misma contiene un "margen punitivo".(5)

En fin, somos del criterio que *el curso de acción correcto* sería el de que este Tribunal determinara que la *tasa de interés* que el Estado debe pagar, sobre *la diferencia* entre la suma originalmente consignada por el Estado en relación con una propiedad que ha expropiado y el justo valor que finalmente determine el foro judicial, *debe ser aquella que, conforme testimonio pericial competente, sea "razonable" en el momento en que el foro judicial determine el justo valor de la propiedad expropiada.* Véanse: *Confederated Salish and Kootenai Tribes v. United States*, ante; *United States v. 100 Acres of Land, Etc., Marin Cty., Cal.*, ante; *Pitcairn v. United States*, ante. Ello, *naturalmente*, requerirá la celebración de una *vista evidenciaria* a esos efectos.

Una vez se determine cuál es el por ciento de interés "razonable", el foro judicial decidirá si aplica, o no, al caso ante su consideración el seis (6) por ciento de interés que establecen las antes citadas Secs. 5(a) y 5(b) de la Ley de Expropiación Forzosa. Esto es, el referido seis (6) por ciento *únicamente* podrá aplicarse en la situación en que el mismo resulte *mayor* que la tasa de interés "razonable" *y no podrá* aplicarse en la situación en que el mismo resulte *menor* que la referida tasa de interés razonable.

---

(5) No debe perderse de vista que, aun cuando la tasa de interés del Reglamento 78-1, ante, no tuviera ese margen punitivo, el foro judicial *no* podría ignorar totalmente, como hace la Mayoría, las disposiciones de las Secs. 5(a) y 5(b) de la Ley de Expropiación Forzosa, 32 L.P.R.A. secs. 2907 y 2908; esto es, en aquella situación en que el seis (6) por ciento provisto fuera mayor que la tasa de interés que se promulgara a través del citado Reglamento 78-1, *venimos en la obligación de implantar el mandato estatutario.* Véase *P.I.P. v. C.E.E.*, 120 D.P.R. 580 (1988).