EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Autoridad de Carreteras y Transportación de Puerto Rico<br>    Apeladas<br>          v.<br>Adquisición de 8554.741 Metros Cuadrados en el Barrio Canas del Término Municipal de Ponce<br>          y<br>Adriana Mercado de Wilson, Richard S., et als<br>    Apelantes<br><br>Autoridad de Carreteras y Transportación de P.R.<br>    Apelada<br>          v.<br>Adquisición de 120,925.207 metros cuadrados en el Barrio Canas del Término Municipal de Ponce<br>          y<br>Eufemia Eileen Mercado y Adriana Luisa Mercado Parra; John Doe y Richard Doe<br>      Apelantes | Apelación<br><br>2008 TSPR 4<br><br>173 DPR _____ |

Número del Caso: AC-2005-58

Fecha: 17 de enero de 2008

Tribunal de Apelaciones:

        Región Judicial de San Juan

Juez Ponente:

        Hon. Nydia Cotto Vives

Abogado de la Autoridad de Carreteras y Transportación de Puerto Rico:

        Lcdo. Rubén E. Alayón del Valle

Abogados de Adriana Mercado de Wilson y otros:

        Lcdo. Ángel R. Jiménez Rodríguez
        Lcdo. Eric A. Tulla

Oficina del Procurador General:

        Lcda. Leticia Casalduc Rabell
        Procuradora General Auxiliar

Materia: Expropiación Forzosa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Autoridad de Carreteras y
Transportación de Puerto Rico
          Apeladas
              v.
Adquisición de 8554.741 Metros
Cuadrados en el Barrio Canas
del Término Municipal de Ponce
              y
Adriana Mercado de Wilson,              AC-2005-58
Richard S., et als
          Apelantes


Autoridad de Carreteras y
Transportación de P.R.
          Apelada
              v.
Adquisición de 120,925.207
metros cuadrados en el Barrio
Canas del Término Municipal de
Ponce
              y
Eufemia Eileen Mercado y
Adriana Luisa Mercado Parra;
John Doe y Richard Roe
          Apelantes


PER CURIAM

San Juan, Puerto Rico, a 17 de enero de 2008.

Se nos solicita la revisión de una Sentencia emitida por el Tribunal de Apelaciones, Región Judicial de San Juan, mediante la cual confirmó y modificó una Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan , que declaró con lugar una solicitud de expropiación a favor de la Autoridad de Carreteras y Transportación. Veamos los

hechos acaecidos que originan el presente recurso.

I

El 26 de abril de 1994, la Autoridad de Carreteras y Transportación de Puerto Rico, en adelante ACT, presentó ante el Tribunal de Primera Instancia dos (2) peticiones de expropiación forzosa para la adquisición de 8,554.741 y 120,925.207 metros cuadrados en el Barrio Canas del término municipal de Ponce.[1] Como justa compensación, la ACT depositó las cantidades de $342,200 y $1,230,700 respectivamente. Se denominaron como partes con interés a la señora Adriana Mercado de Wilson, el señor Richard S., la señora María Luisa, Margarita María de apellidos Wilson Mercado; David Mario, la señora Eileen María de apellidos Coffey Mercado y la señora Eileen Mercado O´hanlon, John Doe, Richard Doe, la señora Eufemia Eileen Mercado, la señora Adriana Luisa Mercado Parra, John Doe y Richard Doe, en adelante y en conjunto las partes con interés.

Luego de un largo y accidentado desarrollo procesal, las partes se reunieron el 21 de octubre de 2003 y llegaron a unos acuerdos transaccionales en cuanto al valor de las propiedades en controversia.[2] Estas propiedades se valoraron en $395,000 (KEF-1994-0133) y $4,252,679 (KEF- 1994-0131) respectivamente. Sin embargo, las partes no pudieron acordar la tasa de interés que debería pagar la ACT sobre la suma adicional pactada.

El 21 de octubre de 2003, las partes con interés presentaron ante el Tribunal de Primera Instancia un escrito

---

[1] Apéndice del recurso de *Certiorari*, págs. 160-166, 475-482.

[2] *Íd.*, págs. 306-309, 605-608.

titulado *"Memorando sobre la Tasa de Interés Aplicable al Pago de Justa Compensación en Casos de Expropiación Forzosa"*.[3] En dicho escrito, las partes con interés plantearon que la tasa de interés prescrita en la Ley de Expropiación Forzosa del Código de Enjuiciamiento Civil de 12 de marzo de 1903[4], según enmendada, en adelante Ley de Expropiación, era inconstitucional de su faz, y en su aplicación, ya que no proveía la justa compensación que requiere el Artículo II, Sección 9 de la Constitución de Puerto Rico.[5] Argumentaron, que la legislación estatal no tomaba en cuenta las fluctuaciones en el mercado local de los intereses entre el tiempo en que la propiedad fue expropiada y la fecha en que se dictaba la sentencia.

El 27 de octubre de 2003, archivadas en autos el 30 de octubre de 2003, el Tribunal de Primera Instancia dictó sentencias parciales, mediante las cuales estableció el valor de las propiedades.[6] En cuanto a una de las propiedades (KEF 1994-0133), el foro de primera instancia decretó que el valor era $395,000. Por ello, le ordenó a la ACT depositar $52,800 debido a que ésta ya había consignado $342,200 al iniciar el procedimiento de expropiación. En cuanto a la otra propiedad (KEF 1994-0131), el mismo foro declaró que el valor de la propiedad era $4,252,679. Por tal razón, le ordenó a la ACT depositar $3,021,979 en vista de que al inicio del procedimiento de expropiación había consignado $1,230,700. Además de las sumas adicionales en los respectivos casos, la ACT debería satisfacer los

---

[3] *Íd.*, págs. 310-393, 610-692.

[4] 32 L.P.R.A. sec. 2901, *et seq.*

[5] 1 L.P.R.A. Const. P.R., Art. II, sec. 9.

[6] Apéndice del recurso de *Certiorari*, págs. 394-397, 695-698.

intereses sobre las respectivas sumas a razón de la tasa vigente de uno por ciento (1%) anual, según establecida por la Oficina del Comisionado de Instituciones Financieras, en adelante OCIF, computados desde la presentación de la petición de expropiación hasta el pago total. Se ordenó al Secretario de Justicia y al Comisionado de Instituciones Financieras, en adelante el Comisionado, se expresaran sobre el planteamiento constitucional de las partes con interés.

El 31 de octubre de 2003, la ACT, presentó ante el Tribunal de Primera Instancia escrito titulado *"Moción Solicitando se Desestime Alegaciones de la Parte con Interés"*.[7] Alegó, entre otras cosas, que la institución que establece el por ciento de intereses a pagarse por sentencia es la Oficina del Comisionado de Instituciones Financieras, en adelante OCIF, la cual no era parte en este caso, por lo que las partes con interés tenían que presentar un caso civil independiente.

El 10 de noviembre de 2003, notificada el 17 de noviembre de 2003, el Tribunal de Primera Instancia emitió *"Orden"* indicando lo siguiente:

> En relación a la Moción Solicitando Se Desestime Alegaciones de la Parte Con Interés radicada el día 31 de octubre de 2003, el Tribunal dictó la siguiente la orden:
>
> "Replique la parte con interés, en un término a vencer en 10 días".[8]

El 25 de noviembre de 2003, las partes con interés presentaron ante el Tribunal de Primera Instancia escrito titulado *"Moción en Cumplimiento con Orden"*.[9] Alegaron, entre otras cosas, que hacer el planteamiento sobre los

---

[7] Apéndice de recurso de *Certiorari*, págs. 398-399, 693-694.
[8] *Íd.*, págs. 402-403, 699-700.

[9] *Íd.*, págs. 404-406, 703-705.

intereses en un pleito separado podría constituir un fraccionamiento y podría interpretarse como una renuncia al mismo.

En cuanto al caso (KEF 1994-0131), el 9 de enero de 2004, la ACT en cumplimiento con la sentencia parcial del 27 de octubre de 2003 del Tribunal de Primera Instancia consignó $3,312,668.55.[10] Esta suma incluía los intereses a razón del uno por ciento (1%) computados desde el 26 de abril de 1994, fecha de radicación de la demanda de expropiación, hasta la consignación final.

En cuanto al caso (KEF 1994-0133), el 2 de febrero de 2004, la ACT, en cumplimiento con la sentencia parcial del 27 de octubre de 2003 del Tribunal de Primera Instancia consignó $57,385.64.[11] Esta suma incluía los intereses a razón del uno por ciento (1%) computados desde el 26 de abril de 1994, fecha de radicación de la demanda de expropiación, hasta la consignación final.

El 3 de febrero de 2004, la OCIF, en cumplimiento con la sentencia del 27 de octubre de 2003 del Tribunal de Primera Instancia, presentó un escrito titulado *"Memorando de la Oficina del Comisionado de Instituciones Financieras en cumplimiento de Orden"*.[12] Alegó, entre otras cosas, que la tasa de interés aplicable es la prescrita en el Reglamento 78-1 de la Junta Financiera[13], en adelante Reglamento 78-1, al momento de dictarse la sentencia. Arguyeron, además, que la Sección 5(a) de la Ley de Expropiación, *supra*, no es

---

[10] *Íd.*, pág. 709.
[11] *Íd.*, pág. 410.

[12] *Íd.*, págs. 411-422, 712-723.

[13] Reglamento 78-1 de la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras, aprobado el 25 de octubre de 1988.

inconstitucional de su faz ya que la tasa de interés pagadera a las partes con interés no surge de dicha ley ni de la Regla 44.3 de Procedimiento Civil[14]. Sostuvieron, además, que la Sección 5(a) de la Ley de Expropiación, *supra*, provee de manera adecuada la justa compensación según dispuesta en el Art. II de la sec. 9 de la Constitución de Puerto Rico. Concluyó, que la aplicación del Reglamento 78-1 a las partes con interés no resultaba inconstitucional ya que la tasa de interés dispuesta por éste alegadamente incorpora y refleja la realidad económica de Puerto Rico.

En cuanto al caso (KEF 1994-0131), el 5 de febrero de 2004, la ACT, consignó una cantidad adicional de $2,526.30 en exceso de intereses no compensados sobre la cantidad de $3,312,668.55[15]

El 19 de febrero de 2004, las partes con interés, presentaron en el Tribunal de Primera Instancia, un escrito titulado *"Réplica a Memorando de la Oficina del Comisionado de Instituciones Financieras en Cumplimiento de Orden."*[16] Alegaron, entre otras cosas, que la Ley de Expropiación, *supra*, era inconstitucional de su faz, ya que el método provisto por la misma para determinar la tasa de interés aplicable en casos de expropiación forzosa, *"…es el germen de su propia inconstitucionalidad."*[17] Sostuvieron, además, lo siguiente:

> Por otro lado, la Ley de Expropiación establece que la tasa aplicable es aquella *"que esté en vigor al momento de dictarse la sentencia."* Al fijar un solo tipo de interés (el fijado a al fecha de la sentencia), el estatuto viola la

---

[14] 32 L.P.R.A. Ap. III, R. 44.3

[15] Apéndice de recurso de *Certiorari*, pág. 724.

[16] *Íd.*, págs. 423-432, 725-734.

[17] *Íd.*

constitución si las variaciones en el tipo de interés durante el periodo en cuestión resultan en que el expropiado reciba menos de la justa compensación que exige nuestra Constitución. Según quedó claramente establecido en el Memorando sobre Tasa de Interés sometido por la compareciente, esa legislación no toma en cuenta las fluctuaciones en el mercado local de intereses entre el tiempo en que la propiedad fue expropiada y la fecha que se dicta la sentencia. Este defecto en la Ley puede causar, por un lado, que el gobierno pague una tasa de interés mayor a la que le corresponde si los intereses al momento de dictarse la sentencia son mayores a los intereses vigentes entre el momento de expropiación y el momento de la sentencia. El defecto en ley también puede causar que el gobierno pague una tasa de interés menor a la que le corresponde recibir el afectado, como parte de su justa compensación.

Señalaron, que el vicio constitucional de la Ley de Expropiación, *supra*, provenía de su propio texto, por lo cual la ley resultaba inconstitucional de su faz.

El 19 de febrero de 2004, notificada el 24 de febrero de 2004, el Tribunal de Primera Instancia emitió *"Sentencia"* determinando que el interés dispuesto en la Ley de Expropiación, *supra*, de uno por ciento (1%) era justo y equitativo para ambas partes.[18]

Inconformes, el 25 de marzo de 2004, las partes con interés presentaron recursos de apelación en el Tribunal de Apelaciones señalando que el foro de primera instancia incidió al declarar constitucional la tasa de interés prescrita en la Ley de Expropiación, *supra*.[19] Alegaron, entre otras cosas, que el por ciento fijo por semestre establecido por el Reglamento 78-1 de la OCIF, no tomaba en cuenta las fluctuaciones en las tasas de interés en los años entre la fecha de la expropiación y la fecha del pago. Esta situación provocaba que el gobierno pagara una tasa de interés menor a

---

[18] *Íd.*, págs. 433-436, 735-738.
[19] *Íd.*, págs. 122-436, 437-738.

la que le correspondía recibir a los peticionarios como parte de su justa compensación en violación a la cláusula de justa compensación de la Constitución de Puerto Rico. Arguyeron, además, que la sentencia dictada por el Tribunal de Primera Instancia, en cuanto a la tasa de interés aplicable al pago de una justa compensación no reflejaba la realidad económica de Puerto Rico.

El 22 de abril de 2004, la ACT, presentó ante el Tribunal de Apelaciones escrito titulado *"Moción en Auxilio de Jurisdicción"*.[20] Argumentó que las alegaciones del recurso de las partes con interés son de carácter constitucional y correspondía al Departamento de Justicia y al OCIF expresarse al respecto.

El 23 de julio de 2004, el Procurador General presentó su alegato ante el Tribunal de Apelaciones.[21] En esencia, argumentó que la tasa de interés dispuesta en la Ley de Expropiación, *supra*, y el Reglamento 78-1 de OCIF, era una justa y equitativa para las partes. Sin embargo, recomendó que se debía devolver el caso al foro de primera instancia para que se hicieran los cómputos correspondientes acorde con las tasas de interés prevalecientes en el mercado, según surgía del Reglamento 78-1 de OCIF y conforme éstas variaron desde la fecha de expropiación hasta la fecha del pago total de la compensación.

El 12 de agosto de 2004, la ACT, presentó ante el Tribunal de Apelaciones escrito titulado *"Moción Urgente Exponiendo la Posición de la Autoridad de Carreteras y Transportación"*.[22] Alegaron, entre otras cosas, que no

---

[20] *Íd.*, págs. 115-116.

[21] *Íd.*, págs. 72-111.
[22] *Íd.*, págs. 66-69.

estaban de acuerdo con el método propuesto por el Procurador General para el cómputo de los intereses legales por estar en contra de lo establecido en la Ley de Expropiación Forzosa, *supra*.

El 24 de agosto de 2004, las partes con interés presentaron ante el Tribunal de Apelaciones escrito titulado "*Réplica a Moción Urgente Exponiendo la Posición de la Autoridad de Carreteras y Transportación*".[23] Alegaron, entre otras cosas, que la ACT apoyaba su posición en una interpretación restrictiva e inconstitucional de la Ley de Expropiación Forzosa, *supra*.

El 13 de septiembre de 2004, la ACT, presentó ante el Tribunal de Apelaciones escrito titulado "*Oposición a Réplica a Moción Urgente Exponiendo la Posición de la Autoridad de Carreteras y Transportación*".[24] Alegaron, en síntesis, que el cómputo de los intereses sobre una suma adicional, en caso de expropiaciones será el tipo de interés anual fijado por la Junta Financiera de la OCIF que esté vigente al momento de dictarse la sentencia por el Tribunal de Primera Instancia, y que dicho interés aplicará a todo el periodo comprendido entre la fecha del "*taking*" hasta el pago de la suma adicional.

El 29 de julio de 2005, notificada el 5 de agosto de 2005, el Tribunal de Apelaciones emitió "*Sentencia*" acogiendo los argumentos del Procurador General.[25] El foro intermedio apelativo sostuvo la constitucionalidad de la Ley de Expropiaciones, *supra*, y confirmó la sentencia emitida por el Tribunal de Primera Instancia. Sin embargo, devolvió el caso

---

[23] *Íd.*, págs. 57-59.
[24] *Íd.*, págs. 47-56.

[25] *Íd.*, págs. 14-46.

al foro de primera instancia para que éste hiciera los cómputos correspondientes acorde con las tasas de interés prevalecientes en el mercado-según surge del Reglamento 78-1 de la OCIF-y <u>conforme éstas habían variado semestralmente desde la fecha de expropiación hasta la fecha del pago total de la justa compensación</u>.

Insatisfecha, la ACT, acude ante nos mediante recurso de *Certiorari*, alegando la comisión del error siguiente:

> **A. ERRÓ EL HONORABLE TRIBUNAL DE CIRCUITO DE APELACIONES AL ORDENAR EL CÓMPUTO DE LOS INTERESES LEGALES EN ACORDE CON LAS TASAS DE INTERÉS PREVALECIENTES EN EL MERCADO SEGÚN SURGEN DEL REGLAMENTO 78-1 DE LA OFICINA DEL COMISIONADO DE INSTITUCIONES FINANCIERAS (OCIF) CONFORME HAN VARIADO SEMESTRALMENTE DESDE LA FECHA DE EXPROPIACIÓN HASTA FECHA DEL PAGO TOTAL DE LA JUSTA COMPENSACIÓN.**

> **EXISTE UN CONFLICTO SUSTANCIAL ENTRE DECISIONES PREVIAS DEL TRIBUNAL DE CIRCUITO DE APELACIONES CON RELACIÓN AL MÉTODO DISPUESTO POR LA LEY PARA CÓMPUTO DE LOS INTERESES LEGALES EN LOS CASOS DE EXPROPIACIÓN FORZOSA.**

Con el beneficio de la comparecencia de las partes, estamos en posición de resolver los asuntos traídos ante nuestra consideración.  Veamos.

II

El Artículo II, Sección 9 de la Constitución de Puerto Rico, dispone que *"No se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley"*.

La obligación del Estado de pagar una justa compensación se puede manifestar de tres (3) maneras: (1) mediante el ejercicio directo del poder de dominio eminente, instando un recurso de expropiación; (2) por medio de su reglamentación,

y (3) cuando ocurre una incautación de hecho al afectar sustancialmente el uso de la propiedad físicamente.[26] Hemos expresado que la justa compensación, "…*es aquella que ponga al dueño en una posición pecuniaria tan buena a la que estaría si la propiedad no se hubiese expropiado*".[27]

Hemos sostenido, de la misma forma que el Tribunal Supremo de Estados Unidos, que la determinación de una justa compensación es esencialmente un ejercicio judicial y no legislativo.[28]    En E.L.A. v. Rexco, *supra*, citando a Monongahela Navigation Co. v. U.S., 148 U.S. 312, 327 (1893) y U.S. v. 50.50 Acres of Land,    931 F.2d 1349 (9th Cir. 1991), sostuvimos lo siguiente:

> [La Justa Compensación] es una controversia judicial y no legislativa. La legislatura puede determinar qué propiedad privada se necesita para propósitos públicos- ésta es una controversia de carácter político y legislativo; pero cuando se ha ordenado la expropiación, entonces la controversia sobre la compensación es judicial.… La constitución ha declarado que se tiene que pagar justa compensación y que su determinación es una cuestión que le compete a los tribunales.

La Ley de Expropiación Forzosa, *supra*, ordena el pago de intereses cuando existe una diferencia entre la suma fijada por la parte que solicita la expropiación y la cantidad que determine el Tribunal como justa compensación.[29]  Sobre este particular, la Sec. 5(b) de la Ley de Expropiación, *supra*, dispone lo siguiente:

---

[26] Velázquez Velázquez v. E.L.A., 135 D.P.R. 84, 88 (1994); Culebra Enterprises Corp. v. E.L.A., 127 D.P.R. 943 (1991); Sucn. García v. Autoridad de Carreteras, 114 D.P.R. 676 (1983); Olivero v. Autoridad de Carreteras, 107 D.P.R. 301 (1978).

[27] E.L.A. v. Rexco Industries, Inc., 137 D.P.R. 683, 689 (1994).

[28] *Íd*; Monongahela Navigat´n Co. v. United States, *supra*,; U.S. v. 50.50 Acres of Land, 931 F.2d 1349 (9th Cir. 1991).
[29] Autoridad de Carreteras v. Adquisición de 8,554.741 metros cuadrados, et als., 2007 T.S.P.R 178, 2007 J.T.S. 184 (2007).

> En cualquier sentencia dictada en un procedimiento de expropiación forzosa para la adquisición de propiedad privada o de cualquier derecho sobre la misma para uso público o aprovechamiento en beneficio de la comunidad, entablado por el Estado Libre Asociado de Puerto Rico o Gobierno Estatal directamente, o a su nombre por cualquier agencia, autoridad, instrumentalidad o funcionario del Estado Libre Asociado de Puerto Rico, en que la cantidad determinada por el tribunal como justa compensación por la propiedad o los derechos en la misma objeto de tal procedimiento, tanto en caso de transmisión del titulo como de la mera posesión sin transmisión del titulo, sea mayor que la cantidad fijada por el demandante y depositada en el tribunal como justa compensación por tal propiedad o derechos en la misma, el Estado Libre Asociado de Puerto Rico pagara el importe de la diferencia entre la suma así fijada por el demandante y depositada por el en el tribunal y la cantidad que a tal efecto haya determinado el tribunal como justa compensación por dicha propiedad o derechos en las mismas objeto de tal procedimiento, **con intereses a razón del tipo de interés anual que fije por Reglamento la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras y que este en vigor al momento de dictarse la sentencia, de conformidad con la Regla 44.3, Ap. III de este titulo, sobre tal diferencia a contar desde la fecha de la adquisición de tal propiedad o derechos y desde esta fecha hasta la del pago de dicha diferencia;** Disponiéndose, que en los casos en que el demandado o demandados apelen de la sentencia fijando la compensación y el Tribunal Supremo confirmase dicha sentencia o rebajase la compensación concedida, el apelante no recobrara intereses por el periodo de tiempo comprendido entre la fecha de radicación del escrito de apelación y hasta que la sentencia del Tribunal Supremo fuera final, firme y ejecutoria.[30](Énfasis Suplido).

El pago de intereses es una parte integral de la justa compensación al amparo del mandato constitucional de justa compensación.[31]

La Ley de Expropiación, *supra*, establece que la tasa de interés que fije la Junta Financiera de la OCIF es la que se utilizará para calcular intereses en casos de expropiación

---

[30] 32 L.P.R.A. sec. 2908.

[31] E.L.A. v. Rexco Industries, Inc., *supra*.

forzosa.[32]  En E.L.A. v. Rexco, *supra*, invalidamos la imposición del seis por ciento (6%), como tasa de interés, anual, según disponía la Ley de Expropiación, *supra*, vigente al momento de dictarse la sentencia. Como resultado de esto, ordenamos que el Estado debía pagar los intereses que surgieren del Reglamento 78-1 de la OCIF que fue aprobado el 25 de octubre de 1988. El Reglamento 78-1 de la OCIF dispone lo siguiente:

> Sección 3 – Fijación de Tasas
> a)**Sentencias impuestas al Estado Libre Asociado de Puerto Rico, sus municipios, agencias, instrumentalidades, corporaciones públicas o funcionarios en su carácter oficial**: La tasa equivalente al rédito de los "U.S. Treasury Bills" con vencimiento a seis (6) meses redondeado al ½ punto más cercano.

III

Con el trasfondo normativo antes expuesto, pasamos a resolver si erró el Tribunal de Apelaciones al modificar y de esa forma confirmar la sentencia emitida por el Tribunal de Primera Instancia. En su sentencia, el foro intermedio apelativo dispuso que el solo utilizar la tasa de interés vigente al momento de dictar la sentencia, no proveía una justa compensación conforme a la Constitución, ya que esta tasa no reflejaba los cambios acaecidos en el mercado entre la fecha de expropiación y la fecha del pago total por los terrenos expropiados. Le asiste la razón. Veamos.

Recientemente, este Tribunal tuvo la oportunidad de resolver la controversia que aquí nos ocupa. En Autoridad de Carreteras v. Adquisición de 8,554.741 metros cuadrados, et als., *supra*, Opinión de 9 de octubre de 2007, atendimos la

---

[32] 32 L.P.R.A. sec. 2908.

controversia de cómo se deben computar las tasas de intereses en casos de expropiaciones forzosas. Sostuvimos, que en los casos donde el periodo entre la incautación y el pago total del Estado exceda un semestre[33], el Tribunal de Primera Instancia debe considerar las variaciones en las tasas de interés durante los distintos semestres. Expresamos, además, lo siguiente:

> De esta forma se asegura que las tasas de interés que se apliquen en un momento dado reflejen las condiciones existentes en ese momento en el mercado para instrumentos financieros. Siendo el instrumento seleccionado por OCIF uno con un término de seis meses, corresponde que las tasas aplicables se revisen semestralmente, tal y como se estipula en el Reglamento 78-1 de la OCIF.

> En E.L.A. v. Rexco, *supra*, dispusimos que las fluctuaciones en el mercado tienen que ser consideradas al computar el interés aplicable en casos de expropiación forzosa. Sin embargo, se le estaba dando una lectura literal a la Ley de Expropiación Forzosa, *supra*, cuando disponía que se utilizara el interés fijado por la OCIF que estuviera en vigor al momento de dictarse la sentencia. La intención de este Tribunal en E.L.A. v. Rexco, *supra*, fue que las tasas de intereses aplicables a casos de expropiación forzosa reflejaran las fluctuaciones imperantes en el mercado de valores. Para lograr dicho objetivo, se tienen que considerar las variaciones en las tasas de interés durante los distintos semestres. De esta forma se cumple con el mandato constitucional de satisfacer una justa compensación en los casos de expropiación forzosa, consagrado en el Art. II, Sec. 9 de nuestra Constitución. Así pues, entendemos que la determinación del Tribunal de Apelaciones a estos efectos debe ser confirmada ya que cumple con el propósito establecido por este Tribunal en E.L.A. v. Rexco, *supra*.

En el presente caso, la incautación ("*taking*") de las propiedades de las partes con interés ocurrió en el año 1994, sin embargo no fue hasta el año 2003 que el foro de primaria

---

[33] Espacio de seis meses naturales.

instancia emitió sentencia estableciendo el valor final de las propiedades. Durante esos nueve (9) años las tasas de interés fijadas por la OCIF variaron semestralmente. Estas variaciones representan las fluctuaciones del mercado durante el período de tiempo pertinente. Siendo los intereses de los casos de expropiación forzosa parte de la justa compensación, procede que el Tribunal de Primera Instancia considere las variaciones en las tasas de interés durante los distintos semestres. De esta forma se llega a una solución justa y razonable que cumple con el principio constitucional de justa compensación.

Debido al hecho que Autoridad de Carreteras v. Adquisición de 8,554.741 metros cuadrados, et als., *supra,* versa sobre la **misma exacta controversia** que nos ocupa, procede aplicar al caso de marras la norma esbozada en dicho caso.

Así las cosas, *resolvemos*, que en los casos de expropiaciones forzosas, donde el período entre la incautación y el pago total del Estado excede un semestre, el Tribunal de Primera Instancia tiene que considerar las variaciones en las tasas de interés durante los distintos semestres, según surgen del Reglamento 78-1 de la OCIF. El Tribunal debe tomar la diferencia entre la incautación inicial y el valor final y añadirle al mismo la cantidad que resulte de aplicarle a dicho valor la tasa de interés anual prevaleciente en el correspondiente semestre, según se establece en el documento que emite la OCIF (Reglamento 78-1), por los correspondientes meses hasta el final del semestre. Al valor que resulte se le aplica la tasa de interés anual prevaleciente en el siguiente semestre, según se establece en el documento que emite la OCIF (Reglamento

78-1, por los correspondientes meses del semestre.  Este proceso se repite hasta la consignación final del valor de la propiedad expropiada que así resulte.

En su escrito de *"Apelación"*, la ACT, argumenta, que se debe dar una lectura literal a la Sección 5(b) de la Ley de Expropiación, *supra*, según la cual aplicaría la tasa de interés prevaleciente al momento de dictarse la sentencia en el documento que emite la OCIF, la cual aquí correspondería a una tasa de uno por ciento (1%).  Sin embargo, no podemos olvidar que los tribunales tienen el deber de armonizar todas las disposiciones de ley envueltas en un caso con miras a lograr un resultado sensato, lógico y razonable que represente la intención del legislador.[34]  De igual forma, es norma reiterada, que antes de decretar la inconstitucionalidad de una ley, el tribunal examinará primero si existe alguna interpretación razonable del estatuto, que le permita soslayar la cuestión constitucional.[35]

Este Tribunal debe rechazar una lectura literal de la Sección 5(b) de la Ley Expropiación, *supra*, según la cual aplicaría la tasa de interés prevaleciente al momento de dictarse la sentencia en el documento que emite la OCIF, la cual aquí correspondería a una tasa de uno (1) por  ciento. La interpretación que estamos haciendo de la Sección 5(b) de la Ley de Expropiación, *supra*, armoniza el propósito expreso de la misma con lo que resolvimos en E.L.A. v. Rexco, *supra*, cuando indicamos que las fluctuaciones en el mercado tienen que ser consideradas al computar el interés aplicable en

---

[34] Pérez Pérez v. Gobierno Mun. de Lares ex rel., 155 D.P.R. 697 (2001).

[35] E.L.A. v. Aguayo, 80 D.P.R. 552, 596 (1958).

casos de expropiación forzosa. Tal y como indicamos en Autoridad de Carreteras v. Adquisición de 8,554.741 metros cuadrados, et als., *supra,* la intención de este Tribunal en E.L.A. v. Rexco, *supra*, fue que las tasas de intereses aplicables a casos de expropiación forzosa reflejaran las fluctuaciones imperantes en el mercado de valores. Para lograr dicho objetivo, se tienen que computar progresivamente sobre la base de distintas tasas de interés aplicables a los semestres del período entre la incautación y el pago final, según determinadas por la OCIF como las tasas aplicables a las sentencias que el Estado tiene que satisfacer para cada semestre. De esta forma se cumple con el mandato constitucional de satisfacer una justa compensación en los casos de expropiación forzosa, consagrado en el Art. II, Sec. 9 de nuestra Constitución.

En mérito de lo anterior, concluimos que el Tribunal de Apelaciones actuó correctamente al devolver el caso al Tribunal de Primera Instancia para que éste hiciera los cómputos correspondientes de conformidad con las tasas de interés prevalecientes en el mercado según surgen del Reglamento 78-1 de la OCIF y conforme éstas han variado semestralmente desde la fecha de la expropiación inicial hasta la fecha del pago total de la justa compensación en ambos casos.

IV

Por los fundamentos antes expuestos confirmamos la sentencia recurrida.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Autoridad de Carreteras y
Transportación de Puerto Rico
          Apeladas
              v.
Adquisición de 8554.741 Metros
Cuadrados en el Barrio Canas
del Término Municipal de Ponce


              y
Adriana Mercado de Wilson,              AC-2005-58
Richard S., et als
          Apelantes

Autoridad de Carreteras y
Transportación de P.R.
          Apelada
              v.
Adquisición de 120,925.207
metros cuadrados en el Barrio
Canas del Término Municipal de
Ponce
              y
Eufemia Eileen Mercado y
Adriana Luisa Mercado Parra;
John Doe y Richard Roe
          Apelantes


SENTENCIA

San Juan, Puerto Rico a 17 de enero de 2008.

        Por los fundamentos antes expuestos en la
Opinión Per Curiam que antecede, la cual se hace
formar parte íntegra de la presente, confirmamos la
Sentencia recurrida.

        Lo acordó el Tribunal y certifica la
Secretaria del Tribunal Supremo. La Jueza Asociada
señora Rodríguez Rodríguez concurre sin opinión
escrita. La Jueza Asociada señora Fiol Matta no
intervino.


                        Aida Ileana Oquendo Graulau
                        Secretaria del Tribunal Supremo